Shirley VAN OOSTING, Plaintiff, Appellant and Cross–Appellee

v.

William B. VAN OOSTING, Defendant, Appellee and Cross–Appellant.

Civ. No. 940003.

Supreme Court of North Dakota.

Sept. 7, 1994.

Timothy D. Lervick of Rolfson Schultz Lervick Law Offices, Bismarck, for plaintiff, appellant and cross-appellee.

Ann Mahoney of Mahoney & Mahoney, for defendant, appellee and cross-appellant.

SANDSTROM, Justice.

In this divorce judgment appeal, we decide if the trial court erred in failing to distribute a portion of one spouse's interest in a trust. We also decide whether the court erred in not awarding permanent support to a spouse suffering from multiple sclerosis—an incurable, progressively debilitating disease. We hold the trial court clearly erred and reverse and remand on the issues. On the remaining property division issues, we affirm.

I

Bruce and Shirley van Oosting were married on June 28, 1969. Bruce was 20 and Shirley was 19. At the time of their marriage, Bruce owned a one-third interest in 1,040 acres of farmland (the Schulte place) with his parents. Bruce and Shirley moved into a house on the Schulte place, adjacent to his parents' farm, and continued to farm with his father.

Bruce farmed with his father for a monthly wage until 1984, when he started gradually taking over management and operation of the farm from his father who was 92 years old.

In 1970, Shirley was diagnosed with multiple sclerosis (M.S.), a disease to the nervous system affecting sensory, motor, vision, hearing, and mental capacities. There is no known cure for M.S., and the effects of the disease never completely go away. Shirley has suffered several exacerbations since being diagnosed with M.S. Exacerbation occurs when the effects of the disease intensify. Shirley's M.S. is currently in remission, but will likely cause more severe physical problems in the future.

During the parties' 24–year marriage, Bruce primarily managed the farm and Shirley primarily took care of the household and the parties' two children, William, Jr., age 22, and Melisa, age 19. During most of their marriage, Shirley did not work outside of the farm. Shirley's total outside employment was approximately three months of part-time employment as a sales clerk, and approximately three months of employment as an assistant activities director in a nursing home.

In the spring of 1992, Bruce and Shirley's marriage deteriorated when Bruce admitted to Shirley he had been having an affair. The parties dispute whether there were marital problems prior to Bruce's revelation. Although they talked of reconciliation, the marriage irretrievably broke down when Bruce left the family home on October 12, 1992, without telling Shirley where he was going or when he would return. Shirley filed for divorce.

After a two-day trial, the trial court issued a 23–page memorandum decision dividing the parties' marital property. The trial court found the marital estate had assets of $1,014,543, debts of $208,297, for a net value of $806,246. Bruce was immediately awarded $909,297, less debt of $208,297, for a net of $701,000. Shirley was immediately awarded $105,246. To equalize the disparity in property, Bruce was ordered to pay Shirley $233,-813 with interest at seven percent over 15 years. In summary, excluding interest, Bruce was awarded $467,187 and Shirley was awarded $339,059. In addition, the trial court ordered Bruce to pay Shirley spousal support of $500 per month for one year.

Shirley appeals from the divorce judgment, claiming the trial court's property division and award of temporary spousal support are clearly erroneous. Shirley claims the trial court decision is clearly erroneous when it (1) fails to include and divide as a marital asset Bruce's interest in a credit trust, created by Bruce's father; (2) unequally divides the marital estate by giving Bruce credit for property given to him by his parents and inherited from his uncle; and (3) fails to award her permanent spousal support. This Court has jurisdiction under Art. VI, § 6 N.D. Const., and N.D.C.C. § 28–27–01. The appeal is timely under Rule 4(a), N.D.R.App.P.

II

In a divorce, the trial court must "make such equitable distribution of the real and personal property of the parties as may seem just and proper, ..." N.D.C.C. § 14–05–24. In dividing the property, the trial court must consider all relevant factors and should follow the *Ruff–Fischer* guidelines.

See *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). The objective is to equitably divide property based on the circumstances of the case. *Blowers v. Blowers*, 377 N.W.2d 127, 129 (N.D.1985). In the total marital estate to be divided, the trial court must include all of the real and personal property owned by the parties, regardless of the source. *Gaulrapp v. Gaulrapp*, 510 N.W.2d 620, 621 (N.D.1994). Separate property, whether inherited or otherwise, must initially be included in the marital estate. *Gaulrapp.* The origin of the property can, however, be considered in making an equitable property division. *Gaulrapp; Winter v. Winter*, 338 N.W.2d 819, 822 (N.D.1983). A property division need not be equal to equitable, but a substantial disparity must be explained. *Heley v. Heley*, 506 N.W.2d 715, 718 (N.D.1993).

The trial court has discretion in applying the guidelines to the facts of the case and to decide an equitable distribution of the property. *Heley.* A trial court's property division is a finding of fact and will not be set aside on appeal unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. *Heley.* A finding of fact is clearly erroneous if, although there is some evidence to support it, a reviewing court, on the entire record, is left with a definite and firm conviction a mistake has been made. *Rueckert v. Rueckert*, 499 N.W.2d 863, 868 (N.D.1993). Conclusions of law are fully reviewable on appeal. *In Interest of Kupperion*, 331 N.W.2d 22, 27 (N.D.1983).

### III

Bruce's father died November 15, 1988, at the age of 97. In his will, he created a marital trust and a credit trust to dispose of his sizable estate. Under the will, his wife has the right to withdraw all assets of the marital trust, even to complete exhaustion. Upon her death, she has a general power of appointment over any remaining assets in the marital trust. If during her lifetime, the corporate trustee decides funds for her care are not reasonably available from her own property, the marital trust, or other sources, she may receive both principal and income distributions from the credit trust.

Bruce, as the only child, is entitled to receive income and principal distributions from the credit trust, in the sole discretion of the corporate trustee. Any assets remaining in the credit trust upon his mother's death are to be distributed to Bruce.

The trial court, in its final memorandum decision, recognized Bruce's "expectancy under this [credit] trust is subject to certain contingencies," but concluded, "it is realistic to expect he will survive his mother and eventually receive a sizeable settlement." The trial court also estimated the credit trust to be worth approximately $607,112, but found that due to the contingencies involved no present value could be placed on Bruce's interest. The court concluded the dispositive question is whether Shirley should share in the trust. On this question, the court answered:

> "Based on the testamentary wish of the defendant's father, the fact that plaintiff has benefited from the many gifts from defendant's parents, the fact that her share of the property division includes a portion of those gifts and that her share of property division is substantial, it is not equitable to divide a portion of defendant's expectancy in this trust to plaintiff."

### A

Shirley claims the trial court erred in not awarding her a portion of the credit trust as part of the property distribution. "Inherited property can be divided between spouses to make an equitable division of property." *Behm v. Behm*, 427 N.W.2d 332, 336 (N.D.1988). The origin of the property, even if acquired before marriage or inherited, is simply one factor to consider in determining an equitable property division. *Winter*, 338 N.W.2d at 822.

Here, the trial court considered the source of the credit trust, and found it would not be equitable for Shirley to share in Bruce's interest because of his father's testamentary intent, the many prior gifts from his parents, and the sizable amount of property Shirley was awarded under the property division. We hold the trial court clearly erred on this issue.

The trial court's reliance upon the testamentary intent of Bruce's father is misplaced. At the time of divorce Bruce had a vested interest in the trust. Although contingent in nature, his interest is certain to reach him upon the death of his mother. Further, Bruce is currently entitled to receive, at the trustee's discretion, income and principal distributions. We are in agreement with numerous other courts that the trust is a property interest subject to division. *See Davidson v. Davidson,* 19 Mass.App.Ct. 364, 474 N.E.2d 1137, 1144 (1985); *Chilkott v. Chilkott,* 158 Vt. 193, 607 A.2d 883, 884 (1992); *Flaherty v. Flaherty,* 138 N.H. 337, 638 A.2d 1254, 1256 (1994); *Buxbaum v. Buxbaum,* 214 Mont. 1, 692 P.2d 411, 413–14 (1984); *Lauricella v. Lauricella,* 409 Mass. 211, 565 N.E.2d 436, 439 (1991); *Trowbridge v. Trowbridge,* 16 Wis.2d 176, 114 N.W.2d 129, 134 (1962). *See generally* Michael Diehl, Note, *The Trust in Marital Law: Divisibility of a Beneficiary Spouse's Interests on Divorce,* 64 Tex.L.Rev. 1301 (1986) (describing diversity on approaches to division by various jurisdictions, but recognizing trend toward divisibility). We note that this Court's previous holding in *Fries v. Fries,* 288 N.W.2d 77 (N.D.1980), is distinguishable. In that case, this Court held a pending personal injury claim is too speculative to be included in a property division. *Fries* at 81. An equitable, vested interest in trust property is regarded as a property interest and is more than a mere *chose in action. In re Marriage of Jones,* 812 P.2d 1152, 1159 (Colo.1991) (citing *Senior v. Braden,* 295 U.S. 422, 433, 55 S.Ct. 800, 803, 79 L.Ed. 1520 (1935)) (emphasis in original).

Because it is a property interest vested in Bruce, the intent of Bruce's father is no longer controlling. In similar cases in which the grantor has placed a spendthrift or anti-alienation clause on the trust, courts have disregarded the restrictions to hold the trust marital property. *See Davidson,* 474 N.E.2d at 1144; *see also Flaherty,* 638 A.2d at 1256 ("we find that the anti-alienation clause and the circumstance that the defendant's remainder interest will not have value until his last surviving parent dies do not preclude our treatment of the interest as marital property"). The express or implied wishes of the grantor are not barriers to equitable distribution. Therefore, the testamentary intent of Bruce's father is not a proper rationale for avoiding distribution.

Bruce's interest in the trust should be treated just as any inherited property should be treated. We have previously acknowledged that "inherited property should be set aside to the heir where fairly possible." *Gaulrapp,* 510 N.W.2d at 621. This statement, however, does not controvert the fundamental principle that a court, in a divorce action, has the power to award the separate property of one spouse to the other when an equitable distribution so requires. *Winter,* 338 N.W.2d at 822. Recent decisions of this Court have emphasized the proposition that distribution of inherited property may be necessary to make division equitable. *Winter; Gaulrapp* at 621; *Behm* at 336; *Anderson v. Anderson,* 368 N.W.2d 566, 568 (N.D.1985). The credit trust has a present asset value of over $600,000. This amount nearly equals the roughly $800,000 that was distributed to the parties from all other property. We hold the failure to include such a potentially large asset in the distribution equation clearly erroneous.

**B**

Shirley next argues the trial court erred in not properly valuing the credit trust. The court found that due to the contingent nature of Bruce's interest it was impossible to place an exact value on his interest in the trust in order to distribute.

The difficulties in valuing an interest in a trust have been compared to those encountered in valuing a pension because the interest in a pension is contingent upon the worker reaching retirement. *See Chilkott,* 607 A.2d at 885. This Court has experience in the valuation of pensions and retirement benefits for distribution. In *Glass v. Glass,* 344 N.W.2d 677 (N.D.1984), the valuation of retirement annuities was addressed. This Court turned to decisions by the Minnesota Supreme Court for suggestions on how to valuate. *Glass* at 678 (citing *Janssen v. Janssen,* 331 N.W.2d 752, 756 (Minn.1983); *Taylor v. Taylor,* 329 N.W.2d 795 (Minn.

1983)). In a later decision, this Court specifically laid out the factors the trial court should address.

" 'In deciding whether retirement benefits should be divided at the time of dissolution or upon future receipt by the employee spouse, the trial court should consider the advantages and disadvantages of each method in light of the facts of the particular case before it.

"Division of retirement benefits at the time of divorce has the obvious advantage of avoiding the continuing jurisdiction of the court in order to [ensure] that the appropriate payments are made to the non-employee spouse upon receipt of pension benefits by the employee spouse. This method is preferred where there are sufficient assets available at the time of divorce to divide the present value of the retirement benefits without causing an undue hardship to either spouse and where testimony and valuation is not unduly speculative.

"A second method requires the determination of a fixed percentage for the non-employee spouse of any future payments the employee receives under the plan, payable when paid to the employee. This method ... has the advantage of making it unnecessary to determine the present value of the pension fund. The fixed percentage method should be used where present value determinations are unacceptably speculative or there are not enough assets to equitably require that benefits due in the future be split presently.' "

*Lentz v. Lentz,* 353 N.W.2d 742, 747 n. 2 (N.D.1984) (quoting *Taylor,* 329 N.W.2d at 798–99). Thus, retirement benefits may be divided at the time of divorce by either awarding the present value of the benefits, or when there are insufficient assets for a present division or when present valuation is too speculative, by awarding a percentage of future payments. *Zander v. Zander,* 470 N.W.2d 603, 605 (N.D.1991). In this case, the trial court found the present value of the trust too speculative to calculate. On remand the appropriate method of distribution, therefore, would be the award to Shirley of a percentage of future payments that would have otherwise gone to Bruce.

## IV

In his proposal for property settlement, Bruce argued a deviation from a fifty-fifty property division was justified based on the numerous gifts to him from his relatives. Bruce argued:

"Almost all of the property which is owned by Bruce and Shirley has a common source: Bruce's parents, Bill and Madge van Oosting. Bruce came into the marriage owning an undivided ⅕ interest in 1,040 acres of farm land (net ownership: 343.2 acres). Bruce's father also paid for all of the materials for Bruce and Shirley's home—at least $45,000. Bruce also received a gift of land (⅕ interest) in December, 1975.... Bruce received gifts of additional land late in the marriage (1987 and 1988, ...). Bruce also received substantial gifts of machinery from his father after Bruce assumed management of the farm in 1984–1985. (Gifts were made to Bruce by his father each time Bruce traded in an item of his father's farm machinery. Bruce became sole owner of the purchased item.) Bruce also acquired ownership of his father's cows each time he culled the herd and purchased replacements or held back heifers. In addition, whenever Bruce and Shirley could not make ends meet on Bruce's monthly wages ($900/month in 1984–1985), Bruce's father allowed Bruce to sell a load of grain and keep the proceeds ($2,000–$3,000). This occurred many times while Bruce's father was living."

Bruce argued he should be given credit for: (1) real estate given to him by his parents in 1967, 1975, 1987, and 1988; (2) value of the farm machinery given to him by his father and traded-in for new machinery; (3) the farm machinery given to him in 1991 and 1992 by his father's estate; and (4) the $85,000 inherited from his uncle in 1991.

The trial court found the real estate given as a gift to Bruce was worth approximately $142,052. The court found it was impossible to value exactly the farm machinery given to Bruce for trade-in on new machinery, but the

gifts exceeded $30,000. The court found the farm machinery given to Bruce in 1991 and 1992 was worth $19,200.

In dividing Bruce and Shirley's marital estate, the trial court found, based on the length of the marriage and each parties' contributions to the marriage, a fifty-fifty property division was a logical and equitable starting place. The trial court, however, found some adjustment from a fifty-fifty division was warranted based on the numerous gifts given to Bruce by relatives:

"The 'gifts can be viewed not only as gifts but also as part of the arrangement between the parties and defendant's father in taking over and operating his farm and to a certain extent earned by the parties for their services.

"There are no easy formulas to apply, but after consideration of all of the factors it seems equitable to deduct from the marital estate 50 percent of these [land, traded-in machinery, and gifted machinery] gifts which total at least $191,257. This has the effect of giving [Shirley] a 25 percent share of the gifts and [Bruce] 75 percent. A portion of the gifts comprising an undivided one-half interest in 1,040 acres of land was given prior to marriage. In addition, it is significant that the gifts were given to Bruce only. Further, the gifts were given to Bruce based on his parents' expectation that he would manage and eventually own the entire farm since he is an only child. On the other hand, after 24 years of marriage, it seems equitable for [Shirley] to have a share of her husband's gifts.

"With regard to the $85,000 inheritance a 50 percent deduct from the marital estate is also equitable. In summary, it is obvious that without the gifts and inheritance to defendant the parties would not have amassed such a sizable marital estate and the division should reflect that fact along with giving effect to defendant's parents' intentions."

■ Shirley argues the trial court misapplied the *Ruff–Fischer* guidelines in dividing the marital estate. Under the guidelines, the trial court, in exercising its discretion, is to consider: the respective ages of the parties; their earning ability; the duration of the marriage; the conduct of each during their marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time, its value at the time, its income producing capacity, if any, and whether it was accumulated or acquired before or after marriage; and, other matters as may be material. *Routledge v. Routledge*, 377 N.W.2d 542, 544–45 (N.D.1985); *see Fischer v. Fischer*, 139 N.W.2d 845, 852 (N.D.1966); *Ruff v. Ruff*, 78 N.D. at 784, 52 N.W.2d at 111.

In reapplying the guidelines on appeal, Shirley argues:

"While the Trial Court ... pays lip service to the length of the marriage, giving Bruce credit for these gifts is a slap in the face to Shirley's contribution as a wife and mother, which enabled Bruce to work for his parents. When Bruce and Shirley were married in 1969, William was already 78 years old. It is reasonable to assume that Bruce was primarily responsible for the farm labor, even though William may have retained management responsibility at that age. Failing to give Shirley equal credit for the 'gifts' from Bruce's parents (which are perhaps better characterized as compensation for services) ignores her contributions to the accumulation of marital assets."

Shirley maintains that under the guidelines she should have been awarded more property based on Bruce's greater ability to earn an annual income, her age, education, lack of outside the home work experience, her physical condition, and Bruce's conduct in breaking up the marriage.

■ Shirley's argument that a fifty-fifty division of property is warranted in this case is compelling particularly as to gifts received early in the marriage. The trial court, in exercising its discretion under the guidelines, found Shirley should share 25 percent of all of the gifts throughout the marriage regardless of when each gift was received. In essence, Shirley is asking this Court to reweigh under the guidelines and find a different and more favorable result. Because the

trial court's findings on division of property, other than the credit trust, are not clearly erroneous, we decline Shirley's invitation.

## V

Shirley contends the trial court erred in not awarding her permanent spousal support. In analyzing Shirley's need for support, the trial court found:

"If plaintiff has demonstrated a financial need this is a case for spousal support. Though she is only 44 years of age, having married at 19, she has no education beyond high school and has a very limited work experience measured in terms of months rather than years. In addition, she suffers from Multiple Sclerosis which is a progressive disease although she is now in remission. On a scale 1 to 5 her present doctor put her condition between a 1.5 and 2. At the present time it is obvious to this court that she is very depressed as a result of this divorce and the events leading to it. She has been advised that until she overcomes her depression she is not a candidate for retraining. If she can overcome her personal problems she has qualities which may permit employment albeit at low salaries. Employment would restore her sense of self worth and esteem which is now affected by this divorce. However, the ability to earn will be at low income and will be affected by her disease. At the present time she walks with a limp and has poor memory.

\* \* \* \* \* \*

"Based on plaintiff's present depressed condition, it is likely she will not accomplish much rehabilitation during the next year. Thereafter she may if her MS allows....

\* \* \* \* \* \*

"There will be some extra expenses in acquiring and furnishing her new home and in adjusting to handling her own affairs. For that reason, spousal support of $500 per month is ordered for one year with payments commencing December 15, 1993 and continuing thereafter for one year on the 15th of each month. After that time, she can live comfortably on the income from her property division and there is no further financial need for spousal support."

We recently distinguished permanent and rehabilitative spousal support:

"There are two types of spousal support. Permanent spousal support is appropriate to provide traditional maintenance for a spouse who is incapable of rehabilitation. Rehabilitative spousal support, on the other hand, is awarded to provide a disadvantaged spouse time and resources to acquire an education, training, work skills, or experience that will enable the spouse to become self-supporting."

*Heley,* 506 N.W.2d at 719 (citations omitted). While temporary spousal support to rehabilitate a disadvantaged spouse is preferred, spousal support may be required indefinitely to maintain a spouse who cannot be adequately retrained to independent economic status. *Heley* at 720.

The trial court found, based on Shirley's present condition, it was unlikely she could accomplish much rehabilitation during the next year. After that time, the court speculated whether the M.S. would allow Shirley to be rehabilitated. The trial court then awarded support for one year. Thus, support would end about the time the court estimated Shirley would be able to begin any rehabilitation, rather than the time she could possibly become rehabilitated. We hold the trial court's award of temporary, rehabilitative support clearly erroneous, in view of Shirley's financial position, lack of skills and training, limited prospects for future employment, and her incurable, progressively debilitating disease. On remand, the trial court is directed to award permanent support in this case, subject to future modification.

When awarding spousal support, the trial court is to apply the *Ruff–Fischer* guidelines. *See Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966); *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107, (1952). Specifically, under the guidelines, the court is to consider the health and physical condition of the parties. *Fischer* at 852; *Ruff* 78 N.D. at 784, 52 N.W.2d at 111. In *Lucy v. Lucy,* 456 N.W.2d 539 (N.D.1990), this Court affirmed

the denial of spousal support to the divorcing wife. Support was denied because the husband was suffering from multiple sclerosis, which could prevent him from continuing to work in the future. *Lucy* at 543–44. In denying support, an earlier decision also involving serious health problems was distinguished. In *Martin v. Martin,* 450 N.W.2d 768 (N.D.1990), precisely the opposite situation faced in *Lucy* was passed upon. In *Martin,* this Court modified an award of permanent spousal support to ensure the wife, who was suffering from cerebral arterial ventrical malformation (a tangled pool of blood vessels), would continue to receive support until her remarriage or death. *Lucy* at 543 (citing *Martin* at 770–71). These cases highlight the significance the health and physical condition of the parties has in determining support.

Our sister-state, Minnesota, is in agreement with our holdings emphasizing the importance of the health of the parties when awarding support. In *Jensen v. Jensen,* 409 N.W.2d 60 (Minn.App.1987), an award of permanent support was upheld to the wife who suffered from M.S. *Jensen* at 62. *Accord Doherty v. Doherty,* 388 N.W.2d 1, 3 (Minn. App.1986). Particular attention was paid to the Minnesota guidelines, which included the physical condition of the spouse seeking support. *Jensen* at 61 (citing Minn.Stat. § 518.-552(2)(f)).

The Minnesota legislature has not only codified the factors to be taken into account when awarding spousal support, but has also created a "presumption" for permanent spousal support when there is uncertainty as to its necessity. Minn.Stat. § 518.-552(3). This approach is helpful. If trial courts find no immediate need for awarding permanent spousal support, they should retain jurisdiction to do so beyond a temporary award, when facing uncertainty about the need for permanent support. This will further the interests of a spouse potentially in need of support on a permanent basis by leaving the award open for later modification.

## VI

The judgment of the trial court as to the division of the credit trust and award of spousal support is reversed and remanded in accordance with this decision. On the remaining property division issues, we affirm.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.