1997 ND 97

**Mary H. ZUGER, n/k/a Mary C. Haunson, Plaintiff, Appellee and Cross–Appellant,**

v.

**William P. ZUGER, Defendant, Appellant and Cross–Appellee.**

Civil No. 960195.

Supreme Court of North Dakota.

May 23, 1997.

Judith E. Howard (argued), of Howard Law Firm, Minot, for plaintiff, appellee, and cross-appellant.

Robert O. Wefald (argued), of Wefald Law Office, P.C., Bismarck, for defendant, appellant, and cross-appellee.

MESCHKE, Justice.

[¶ 1] William P. Zuger [Bill] appealed a divorce decree to challenge the division of property, the award of permanent spousal support, and the award of attorney fees. Mary Zuger cross-appealed to challenge joint custody and visitation. We affirm in part, reverse in part, and remand with directions.

I. FACTS

[¶ 2] Bill and Mary were married in 1977. They have two sons, born in 1980 and 1983. The marriage was turbulent and, on at least two occasions, Bill physically abused Mary.

[¶ 3] When they were married, Bill practiced in a law firm started by his father, and Mary worked as a secretary for Bill. Bill later opened his own practice. Mary earned degrees in Spanish and secondary education and, at the time of the divorce, was teaching Spanish at Dickinson State University.

[¶ 4] Mary sued Bill for divorce. The trial court divided the marital property and ordered Bill to pay $100 per month in permanent spousal support and $5,000 for Mary's attorney fees. The court ordered joint legal custody of the children, but placed primary physical custody with Mary. Bill was given visitation each Wednesday evening, every weekend except one each month, and nearly seven weeks during the summer. Mary was given ultimate authority to decide educational matters affecting the children, while Bill had ultimate authority to decide non-emergency medical matters.

## II. BILL'S APPEAL

[¶ 5] Bill challenges various financial aspects of the divorce decree, contending the trial court erred (1) by including Bill's fee in one contingent fee case in the marital estate; (2) in valuing Bill's law-office money-market account; (3) by awarding Mary part of Bill's future share in a trust set up by his father;(4) by awarding permanent spousal support; and (5) by awarding attorney fees to Mary.

### A. PROPERTY DIVISION

[¶ 6] Bill contends several of the trial court's findings on property division are erroneous. In *Grinaker v. Grinaker*, 553 N.W.2d 204, 207–208 (N.D.1996), we summarized our standard for reviewing a trial court's valuation and distribution of marital property:

> The trial court must make an equitable distribution of the marital property, based upon the facts and circumstances of each individual case. NDCC 14–05–24; *Volson v. Volson*, 542 N.W.2d 754, 756 (N.D.1996). The court's determinations on valuation and division of property are findings of fact that will only be reversed on appeal if they are clearly erroneous. *Volson*, 542 N.W.2d at 756; *Braun v. Braun*, 532 N.W.2d 367, 370 (N.D.1995). A finding is

clearly erroneous only if the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been made. *Buzick v. Buzick*, 542 N.W.2d 756, 758 (N.D.1996). As *Buzick*, 542 N.W.2d at 758, and *Fenske v. Fenske*, 542 N.W.2d 98, 102 (N.D.1996), explain, the trial court's findings of fact are presumptively correct, and the complaining party bears the burden of demonstrating on appeal that a finding of fact is clearly erroneous.

### 1) CONTINGENT FEE

[¶ 7] Bill argues that the trial court erred by including in the marital estate a contingent fee he earned in a case acquired and settled while the parties were separated. Bill says Mary made no contribution toward this case and therefore the earned fee should be excluded from the marital estate.

[¶ 8] To make an equitable distribution of property under NDCC 14–05–24, the trial court must include in the marital estate all of the parties' assets, regardless of source. *Linrud v. Linrud*, 552 N.W.2d 342, 344 (N.D. 1996); *Bell v. Bell*, 540 N.W.2d 602, 604 (N.D.1995). A spouse need not make a direct contribution to the acquisition of an asset for it to be included in the marital estate. *See, e.g., Berg v. Berg*, 490 N.W.2d 487, 492 (N.D.1992); *Bullock v. Bullock*, 354 N.W.2d 904, 909–910 (N.D.1984). An asset accumulated after the spouses have separated, but while the marriage still exists, is includable in the marital estate. *Keig v. Keig*, 270 N.W.2d 558, 560 (N.D.1978). As *Linrud*, 552 N.W.2d at 344, and *van Oosting v. van Oosting*, 521 N.W.2d 93, 96 (N.D.1994), illustrate, the source of the property is only one factor for the court to consider in making an equitable distribution.

[¶ 9] In this case, although Mary did not make a direct contribution to this contingent fee, it was accumulated during the marriage. The trial court therefore properly included the fee in the marital estate.

### 2) MONEY MARKET ACCOUNT

[¶ 10] Bill argues the trial court erred in valuing the money market account for his

law office with the value given at trial, rather than at the time of distribution several months later. We recently addressed the timing of valuation of fluctuating assets in *Grinaker*. In that case, there was a six-month delay between trial and entry of the judgment. The husband sought to introduce evidence that the value of certain mutual funds and annuity accounts had substantially changed since trial. We said:

> Common sense dictates that marital property be valued as of the date of trial, rather than the date of distribution. The trial court hears the evidence on value at trial, and the evidence will ordinarily give a current value for the property. When valuing items like the mutual funds and variable annuities here, any evidence presented at trial on value for some future date would have been purely speculative. The difficulty with the procedure attempted by Gary in this case is evident. Parties would be free to file further "evidence," not subject to cross-examination, whenever they believed a marital asset had changed in value. This procedure would certainly lead to a never-ending trial by affidavit, with parties continually submitting account statements and other materials with each fluctuation of the financial markets.

*Grinaker*, 553 N.W.2d at 208–209. We conclude the trial court's finding on the value of this money market account is not clearly erroneous.

### 3) TRUST SHARE

■ [¶ 11] Bill argues the trial court erred in awarding Mary one-half of Bill's share of a trust set up by his father.

[¶ 12] Bill's late father established a credit trust for Bill's mother to receive the income during her lifetime, and for Bill and his three siblings to receive the principal upon the death of Bill's mother. The trust instrument allows the principal to be invaded up to a maximum of $5,000 or 5 percent per year, whichever is greater. At the time of trial, the trust principal was more than $936,000. Because the principal could be invaded and reduce the share available to Bill upon his mother's death, the trial court concluded an award of a specific dollar amount would be speculative. Relying upon *van Oosting*, the court therefore ordered that Mary receive one-half of Bill's share when it becomes available to him.

[¶ 13] Bill contends it was inequitable to award Mary any part of Bill's share in the trust, arguing that Mary received substantial gifts from Bill's parents during the marriage and received substantial property under the decree. Identical arguments were raised and rejected in *van Oosting*, a case factually indistinguishable from this one. In *van Oosting*, 521 N.W.2d at 96–98, we held the trial court's failure to award the wife a share of her husband's interest in a credit trust was clearly erroneous, and we remanded with directions that the court award the wife a percentage of the trust proceeds when received by the husband. The trial court in this case followed *van Oosting*, included Bill's interest in the trust as a marital asset and, recognizing the speculative nature of that interest, ordered that Mary receive a percentage of what Bill receives.

[¶ 14] Bill argues that the trial court was invading his "inheritance" from his father, and therefore he should be entitled to a share of Mary's future inheritance from her parents. Bill's interest in the trust is not a future inheritance; he has a current vested interest in the trust. As we explained in *van Oosting*, 521 N.W.2d at 97, when the trust interest is vested, "[a]lthough contingent in nature, his interest is certain to reach him upon the death of his mother."

■ [¶ 15] Bill insists *van Oosting* is distinguishable because the wife in that case was ill, while Mary is healthy and able to work. Those are factual details that factor into the trial court's decision whether, and to what extent, Mary should share in Bill's interest in the trust. The trial court found that it was equitable to distribute one-half of Bill's share in the trust to Mary. That finding of fact is presumptively correct, and Bill has not met his burden of demonstrating that the finding is clearly erroneous.

### B. SPOUSAL SUPPORT

■ [¶ 16] Bill argues the trial court erred in ordering him to pay $100 per month per-

manent spousal support to Mary. He contends that Mary has been fully rehabilitated because she acquired college degrees during the marriage, received substantial property under the decree, and is employed.

[¶ 17] A divorce court "may compel either of the parties ... to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively." NDCC 14–05–24. As *Wald v. Wald*, 556 N.W.2d 291, 296 (N.D.1996), and *Wiege v. Wiege*, 518 N.W.2d 708, 710 (N.D.1994), show, spousal support decisions are findings of fact that will not be reversed on appeal unless clearly erroneous.

[¶ 18] We differentiate between two types of spousal support. *Heley v. Heley*, 506 N.W.2d 715, 719–720 (N.D.1993). Rehabilitative spousal support is ordered to give a disadvantaged spouse time and resources to acquire an education, training, work skills, or experience that will allow the spouse to become self-supporting. *Id.* Permanent spousal support is ordered to maintain a somewhat comparable standard of living for a spouse who is incapable of adequate rehabilitation. *Id.*

[¶ 19] Bill contends permanent support is inappropriate because Mary is presently employed and self-supporting. We have clarified, however, that permanent support is not limited to a spouse who is incapable of *any* rehabilitation, but may also be awarded to a spouse who is incapable of *adequate* rehabilitation or self-support. *Wald*, 556 N.W.2d at 296; *Wiege*, 518 N.W.2d at 711. As *Wald* at 296–297, and *Wiege* at 711–712, illustrate, permanent support is thus appropriate when a substantial disparity between the earning abilities of the spouses exists.

[¶ 20] The trial court found that Bill had an average annual income of nearly $120,000. The court found that Mary was capable of earning $10,000–$20,000 per year as a Spanish instructor. This substantial disparity in earning ability supports this permanent spousal support. We affirm the trial court's findings on spousal support.

## C. ATTORNEY FEES

[¶ 21] Bill challenges the trial court's award of $5,000 in attorney fees to Mary. He contends Mary was awarded sufficient property to pay her own attorney fees.

[¶ 22] The North Dakota Century Code authorizes an award for attorney fees in a divorce case. NDCC 14–05–23. In *Quamme v. Bellino*, 540 N.W.2d 142, 148 (N.D.1995), we explained the relevant standards:

> The principal standards guiding an award of attorney fees in a divorce action are one spouse's need and the other's ability to pay. *Foreng v. Foreng*, 509 N.W.2d 38, 41 (N.D.1993). "The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party has unreasonably increased the time spent on the case." *Bakes v. Bakes*, 532 N.W.2d 666, 669 (N.D.1995) (citing *Lucy v. Lucy*, 456 N.W.2d 539, 544 (N.D.1990)). We will not overturn an award of attorney fees unless the appellant affirmatively establishes the trial court abused its discretion. *Heller v. Heller*, 367 N.W.2d 179, 184 (N.D.1985).

We have already pointed out the great disparity in the respective incomes here: Bill earns six to twelve times more than Mary. Under these circumstances, the trial court did not abuse its discretion in awarding $5,000 in attorney fees to Mary.

## III. MARY'S CROSS–APPEAL

[¶ 23] Mary challenges the placement of joint custody and the visitation schedule. She also seeks attorney fees for this appeal.

## A. CUSTODY

[¶ 24] Mary contests the trial court's finding that the presumption against awarding custody to a parent who has engaged in domestic violence was rebutted in this case. Accordingly, she contends joint custody is inappropriate.

[¶ 25] A trial court's custody decision is a finding of fact that will not be reversed on appeal unless it is clearly erroneous.

*Kluck v. Kluck*, 1997 ND 41, ¶ 14, 561 N.W.2d 263; *Huesers v. Huesers*, 1997 ND 33, ¶ 6, 560 N.W.2d 219. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

■■■ [¶ 26] NDCC 14–09–06.2(1)(j) requires a court to consider evidence of domestic violence to determine custody:

> In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, this evidence creates a rebuttable presumption that a parent who has perpetrated domestic violence *may not be awarded* sole or *joint custody of a child.* This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent.

(Our emphasis). By its terms, the statutory presumption applies to joint custody with an abusive parent.

[¶ 27] The effect of this presumption was explained in *Engh v. Jensen*, 547 N.W.2d 922, 924 (N.D.1996):

> When credible evidence of domestic violence is presented in a child custody dispute, such evidence "creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child." N.D. Cent.Code § 14–09–06.2(1)(j). We have interpreted the statutory presumption, in essence, to make domestic violence the paramount factor to consider in a custody decision.... The rebuttable presumption outweighs other factors and prevents the abusive parent from obtaining custody of the child, unless, in the case of two fit parents, the violent parent proves "by clear and convincing evidence that the best interests of the child require" that the perpetrator receive custody. N.D. Cent. Code § 14–09–06.2(1)(j)....

[¶ 28] In *Heck v. Reed*, 529 N.W.2d 155, 162 (N.D.1995), we described the formidable burden upon a violent parent to overcome this presumption:

> In amending subsection (j), the legislature placed the burden of proof on the perpetrator to prove that the best interests of the children *require* that the perpetrator be a custodial parent. NDCC § 14–09–06.2(1)(j). The use of the word "require" is a clear legislative signal that the presumption against awarding custody to a domestic violence perpetrator is not overcome merely by balancing the other factors slightly in the perpetrator's favor. The word "require" is a word denoting compulsion; it means to "insist upon" or "demand." *Webster's New World Dictionary*, 1208 (2d College Ed.1980). The legislature intended not only that domestic violence committed by a parent weigh heavily against that parent's claim for child custody, but that it be overcome only by clear and convincing evidence that the best interests of the children demand that the perpetrator of domestic violence serve as custodial parent.
>
> ... In a real sense, it takes compelling or exceptional circumstances under NDCC § 14–09–06.2(1)(j) to award custody to a perpetrator of domestic violence, and certainly something more than the customary weighing and reciting of the factors found in NDCC § 14–09–06.2(1)(a) through (i), (k), (*l* ).

[¶ 29] The trial court in this case found that Bill's domestic violence triggered the statutory presumption against his custody. The court found, however, that the presumption was overcome, citing numerous factors that the court believed established joint custody was in the best interests of the children. The factors listed by the court were:

1) Bill's violence was not directed at the children;

2) The children are old enough that there is minimal risk of harm to them from Bill's temper;

3) The violence was related to the marital relationship and is unlikely to continue after the divorce;

4) Bill is on medication to control his stress and alleviate depression;

5) Mary is very over-protective of the children;

6) Bill and Mary live close to each other, so the children could go to the other parent for protection if necessary;

7) The risk of further violence is minimal because of the ages of the children and the proximity of Bill's and Mary's homes; and

8) Bill and Mary each have "great contributions available for the children.".

Under our prior opinions on the effect of the statutory presumption, most of these factors are irrelevant or insufficient to overcome the presumption.

[¶ 30] Evidence that the violence will not occur again because the marriage has ended or these parents will have little contact with each other does not rebut the presumption. *See Engh,* 547 N.W.2d at 925–926; *Heck,* 529 N.W.2d at 164–165. Nor is it relevant that the violence was not directed at the children. *Id.*

[¶ 31] The factors used by the trial court focused almost exclusively upon Bill's conduct and the likelihood he would commit more violence in the future. Once the presumption arises, sole custody with the non-abusive parent is presumed unless the abuser can show by clear and convincing evidence that the best interests of the children somehow require the abusive parent to participate in or have custody. To marshal that clear and convincing evidence, often "it will be necessary to detail the failings of the abused rather than the virtues, if they exist, of the abuser." *Heck,* 529 N.W.2d at 166 (VandeWalle, J., concurring). Thus, to rebut the presumption, Bill needed to demonstrate by clear and convincing evidence why sole custody with Mary was not in the children's best interests.

[¶ 32] Bill concedes on appeal that "[h]e has never questioned Mary as a parent and he does not dispute that Mary is a 'fit parent.'" When questioned at trial whether he had "problems" with Mary's parenting abilities, Bill responded:

No. And I—I have taken that position both by repeated affidavits to this Court and otherwise from the very beginning of

this. Mary is a good mother. She loves the kids; the kids love her.

The only factor cited by the trial court on Mary's parental abilities was that Mary was over-protective of the children. The court added that "Bill is more inclined to foster independence on the part of the boys." There is no evidence, however, that Mary is so abnormally over-protective that harm or psychological difficulty for the children will result. As cases like *Engh,* 547 N.W.2d at 926, *Bruner v. Hager,* 534 N.W.2d 825, 828 (N.D.1995), and *Heck,* 529 N.W.2d at 162, exemplify, absent some showing of unusual harm to the children from Mary's more protective nature, this finding is simply one of the customary factors used for a custody decision, so it does not rebut the presumption.

[¶ 33] We conclude the trial court's placement of joint custody is clearly erroneous. We therefore reverse and remand for entry of a decree placing sole physical custody with Mary.

[¶ 34] We also reverse that part of the divorce decree giving Bill ultimate authority over medical decisions affecting the children. Under the circumstances of this case, splitting authority over critical decisions affecting the children can only continue the animosity and conflict between Mary and Bill. Shared decisionmaking authority can be successful only where the parties have demonstrated an ability and willingness to cooperate in the children's best interests. *See Olson v. Olson,* 361 N.W.2d 249, 251 (N.D. 1985). The evidence in this case demonstrates diametrically opposed views on parenting by Bill and Mary and continuous conflict over parental decisions. Rather than extend that conflict and cause further judicial intervention to mediate any future conflict, we conclude it is important to keep all decisionmaking authority with the sole custodial parent, Mary.

### B. VISITATION

[¶ 35] The trial court ordered that Bill would have visitation each Wednesday evening, each weekend except one every month, and nearly seven weeks during the

summer. Mary challenges the frequency of weekend visitations, contending Bill should get only a single weekend per month.

[¶ 36] The trial court's decision on visitation is a finding of fact that will not be reversed on appeal unless it is clearly erroneous. *Kluck*, 1997 ND 41, ¶ 24, 561 N.W.2d 263. In cases involving domestic violence, NDCC 14–05–22(3) governs visitation:

> If the court finds that a parent has perpetrated domestic violence and that parent does not have custody, the court shall allow only supervised child visitation with that parent unless there is a showing by clear and convincing evidence that unsupervised visitation would not endanger the child's physical or emotional health.

*See also Kluck*, 1997 ND 41, ¶ 21, 561 N.W.2d 263. However, Mary did not seek supervised visitation in the trial court. Nor does she challenge on appeal the unsupervised visitation with Bill on Wednesdays and during the summer weeks. Mary has thus effectively conceded that unsupervised visitation will not endanger the children's physical or emotional health. Therefore, supervised visitation is not required.

[¶ 37] Mary argues the weekend visitation schedule should be altered to limit Bill's visitation to only one weekend per month. She contends this is necessary for her to assure the boys do their homework, because Bill is less assertive about making the boys do their school work. We have reviewed the record and conclude the trial court's findings on visitation are not clearly erroneous.

## C. ATTORNEY FEES ON APPEAL

[¶ 38] Mary seeks an award of attorney fees for this appeal. Under NDCC 14–05–23, we have concurrent jurisdiction with the trial court to award attorney fees for an appeal in a divorce. *Martin v. Martin*, 450 N.W.2d 768, 771 (N.D.1990). We have often expressed our preference to have this issue addressed initially by the trial court because it is generally in a better position to weigh the relevant factors. *See, e.g., Hager v. Hager*, 539 N.W.2d 304, 306 (N.D.1995); *Wiege v. Wiege*, 518 N.W.2d 708, 712 (N.D.1994). We therefore direct the trial court on remand to consider awarding attorney fees to Mary for this appeal.

## IV. CONCLUSION

[¶ 39] We reverse the placement of joint custody and remand for entry of a decree consistent with this opinion. We direct the trial court on remand to consider an award of attorney fees to Mary for this appeal. In all other respects, we affirm the decree.

[¶ 40] VANDE WALLE, C.J., MARING and NEUMANN, JJ., and JAMES M. BEKKEN, District Judge, concur.

[¶ 41] JAMES M. BEKKEN, District Judge, sitting in place of SANDSTROM, J., disqualified.