1999 ND 103

Melissa M. MOILAN, Plaintiff,
Appellee and Cross–
Appellant,

v.

Arne V. MOILAN, Defendant,
Appellant and Cross–
Appellee.

No. 980268.

Supreme Court of North Dakota.

June 18, 1999.

Gary H. Lee, Olson Burns Lee, Minot, for plaintiff, appellee and cross-appellant.

Marina Spahr, Murphy & Spahr Law Office, PC, Carrington, for defendant, appellant and cross-appellee.

KAPSNER, Justice.

[¶ 1] Arne Moilan appealed from a judgment granting a divorce, dividing the marital property, and denying spousal support to Arne. Melissa Moilan cross-appealed from the judgment. We conclude the district court's findings of fact on spousal support and property division are clearly erroneous, and we reverse and remand for further proceedings in accordance with this opinion.

## I.

[¶ 2] Arne and Melissa were married in South Dakota in 1983. At the time of the marriage Melissa was in her first year of medical school and Arne was in his final year in college majoring in electrical engineering. After Melissa completed medical school in 1987 the couple moved to Iowa, where Melissa entered a pediatrics residency program at the University of Iowa and Arne began studies for a masters degree in electrical engineering. Arne subsequently took an electrical engineering job in Cedar Rapids and commuted 100 miles daily. Arne later quit his job to return to school, and ultimately earned a masters degree in electrical and computer engineering from the University of Iowa. The couple's first child was born in Iowa in 1990.

[¶ 3] After completing her residency program in 1990, Melissa was required to spend a four-year term in the Air Force, which had provided financial assistance for her education. The family was transferred to Shreveport, Louisiana, where Melissa served her military obligation and Arne

entered the doctoral program at Louisiana Tech University. During the family's time in Louisiana their second child was born in 1994.

[¶ 4] Melissa completed her military commitment and accepted a position as a pediatrician with Trinity Medical Center in Minot. After the family moved to North Dakota Arne initially was a stay-home dad, taking care of the children full time. Arne was also working on his doctoral dissertation, and eventually the children were placed in daycare. Arne did not finish his dissertation in the allotted time and did not receive his doctorate.

[¶ 5] Melissa brought this action for divorce in 1997. Arne subsequently accepted a job as an applications engineer with Cannon Technologies in Carrington and moved into an apartment there.

[¶ 6] On the first day of trial the parties stipulated Melissa would have physical custody of the children. The court awarded 61 percent of the marital property to Melissa and 39 percent to Arne. Arne was awarded extensive visitation but was ordered to bear all costs associated with the visitation. Arne was also ordered to pay monthly child support of $695. The court refused to award spousal support to Arne.

[¶ 7] Arne appealed from the judgment, and Melissa cross-appealed.

## II.

[¶ 8] Arne asserts the trial court erred in refusing to award him spousal support.

[¶ 9] Upon granting a divorce, the trial court may compel either party to pay spousal support. N.D.C.C. § 14–05–24; *Wetzel v. Wetzel*, 1999 ND 29, ¶ 20, 589 N.W.2d 889. The trial court's determination on spousal support is a finding of fact which will not be set aside on appeal unless clearly erroneous. *Wetzel*, at ¶ 20; *Kautzman v. Kautzman*, 1998 ND 192, ¶ 19, 585 N.W.2d 561. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made. *Wilhelm v. Wilhelm*, 1998 ND 140, ¶ 11, 582 N.W.2d 6.

[¶ 10] In determining spousal support, the court must apply the *Ruff–Fischer* guidelines:

The *Ruff–Fischer* guidelines apply to decisions about the amount and duration of spousal support, and require consideration of:

" 'the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.' "

*Gierke v. Gierke*, 1998 ND 100, ¶ 21, 578 N.W.2d 522 (quoting *Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶ 14, 563 N.W.2d 377).

[¶ 11] The determination whether to award spousal support must take into consideration the needs of the disadvantaged spouse and the supporting spouse's needs and ability to pay. *Kautzman*, 1998 ND 192, ¶ 19, 585 N.W.2d 561. The court may also consider the accustomed standard of living of parties in a long-term marriage and the need to balance the burden created by the separation when it is impossible to maintain two households at the pre-divorce standard of living. *Fox v. Fox*, 1999 ND 68, ¶ 20, 592 N.W.2d 541; *Donarski v. Donarski*, 1998 ND 128, ¶ 6, 581 N.W.2d 130. Rehabilitative support is appropriate when one spouse has bypassed opportunities or lost advantages as a consequence of the marriage or when one spouse has contributed during the marriage to the other's increased earning ca-

pacity or moved to further the other's career. *Welder v. Welder,* 520 N.W.2d 813, 819 (N.D.1994); *see also Hogue v. Hogue,* 1998 ND 26, ¶ 26, 574 N.W.2d 579. Also significant to the determination of spousal support is whether there is a substantial disparity in earning capacity, and where there is a substantial income disparity which cannot be readily adjusted by property division or rehabilitative support, permanent spousal support may be appropriate. *Fox,* at ¶ 21; *Donarski,* at ¶ 6.

[¶ 12] All of the above factors militate in favor of an award of support to Arne. Arne has a demonstrated need for additional financial support, and Melissa has the ability to pay support. Melissa earns $121,000 annually, nearly four times Arne's $34,000 salary. Melissa is living in the family home, valued at $180,000; Arne is living in a two-bedroom apartment. Arne turned down job offers and moved with Melissa when her educational or career plans dictated, and at times performed the role of stay-at-home dad so Melissa could pursue her career.

[¶ 13] Although these facts all suggest Arne has been disadvantaged by the divorce and spousal support is warranted, the trial court found Arne was not disadvantaged by the divorce:

> [Arne] earns less money than [Melissa], but is currently practicing in his chosen professional field, albeit now for only a few months. He has ample opportunity to progress in his professional field both within, and without the State of North Dakota. [Arne] has had health problems, but those problems have now been resolved, and all expenses for those medical problems were paid for by [Melissa]. [Arne] was not disadvantaged by this marriage. [Melissa] urged him to continue his education and basically paid the expenses of that education. [Arne] is not in need of rehabilitation as he is fully self-supporting, and working in his chosen professional field.

[¶ 14] We rejected an identical argument, and reversed and remanded for an award of spousal support, in *Van Klootwyk v. Van Klootwyk,* 1997 ND 88, 563 N.W.2d 377. In *Van Klootwyk,* the husband earned $76,000 annually. The wife earned a bachelor's degree in nursing during the marriage and completed a degree in a nurse practitioner program after the parties separated. She had made $30,000 annually as a nurse and had a salary potential of up to $55,000 as a nurse practitioner.

[¶ 15] The trial court refused to award spousal support to the wife, finding she was not disadvantaged by the divorce because she "received education during the marriage, has an adequate salary and is self supporting." *Id.* at ¶ 14. We concluded the trial court had erroneously applied an incorrect view of spousal support:

> There are two different concepts of rehabilitative spousal support. *See* Marcia O'Kelly, *Entitlements to Spousal Support After Divorce,* 61 N.D.L.Rev. 225, 242 (1985). One is a "minimalist doctrine" and the other a more "equitable concept" of rehabilitative support. *Id.* at 242–43. The "minimalist doctrine" has as its objective to educate and retrain the recipient for minimal self-sufficiency. *Id.* at 242. The "equitable doctrine" tries to enable the disadvantaged spouse to obtain "adequate" self-support after considering the standard of living established during the marriage, the duration of the marriage, the parties' earning capacities, the value of the property and other *Ruff–Fischer* factors. *Id.* at 244–55.

> This court has not adopted the "minimalist doctrine"—one where the only determination is whether the recipient of support is merely "self-supporting." We have upheld rehabilitative spousal support where the recipient is already working full time. *See, e.g., Wiege v. Wiege,* 518 N.W.2d 708, 710 (N.D.1994); *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992); *Williams v. Williams,* 302 N.W.2d 754, 758 (N.D.1981). In *Wahlberg,* the husband argued that be-

cause the wife was already self-supporting she was not "disadvantaged." *Wahlberg* at 145. This court stated, "[t]he need which evidences that one spouse has been disadvantaged by the divorce and that rehabilitative support is, therefore, appropriate is not limited to the prevention of destitution." *Id.* We have held a spouse is "disadvantaged" who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity. *Id.* We have also stated a valid consideration in awarding spousal support is balancing the burdens created by divorce. *Id.*

*Van Klootwyk,* at ¶¶ 15–16; *see also Fox,* 1999 ND 68, ¶ 20, 592 N.W.2d 541; *Gierke,* 1998 ND 100, ¶ 22, 578 N.W.2d 522. We concluded the trial court's finding that the wife had not been disadvantaged by the divorce was induced by an erroneous view of the law and was clearly erroneous. *Van Klootwyk,* at ¶ 21.

[¶ 16] The same result is required here. The trial court clearly applied the minimalist view of spousal support when it rejected Arne's request for support on the basis he had received an education, was working, and was self-supporting. The trial court failed to take into consideration other factors, including the considerable disparity in earning capacity, Arne's foregone opportunities and contributions to Melissa's increased earning ability, and the unequal burdens which this divorce has created upon the parties. At a minimum, Arne needs sufficient support to allow him to fully reenter the job market and reestablish his career.

[¶ 17] We conclude the trial court's finding Arne has not been disadvantaged by the divorce was induced by an erroneous view of the law and is clearly erroneous. We reverse and remand for an award of spousal support in accordance with the appropriate factors under North Dakota law.

## III.

[¶ 18] Upon granting a divorce, the trial court is required under N.D.C.C. § 14–05–24 to make an equitable distribution of the parties' real and personal property. *Wetzel v. Wetzel,* 1999 ND 29, ¶ 16, 589 N.W.2d 889. The trial court must consider the *Ruff–Fischer* guidelines to aid in the determination of an equitable distribution of the property. *Id.* The trial court's determinations on value and distribution of marital property are findings of fact, which will not be disturbed on appeal unless they are clearly erroneous. *Id.; Kautzman v. Kautzman,* 1998 ND 192, ¶ 8, 585 N.W.2d 561.

## A.

[¶ 19] Arne was awarded property valued at $40,517, or 39 percent of the marital estate; Melissa received property valued at $63,139, or 61 percent of the estate. Arne asserts this division of the marital property was clearly erroneous.

[¶ 20] In reviewing a property division, we start with the view that marital property should be equally divided, particularly in a lengthy marriage. *Fox v. Fox,* 1999 ND 68, ¶ 7, 592 N.W.2d 541; *Kautzman,* 1998 ND 192, ¶ 7, 585 N.W.2d 561. A property division need not be equal to be equitable, but the trial court must explain any substantial disparity. *Fox,* at ¶ 7; *Kautzman,* at ¶ 7.

[¶ 21] In its findings of fact, the trial court attempted to justify the great disparity in the property division:

Distribution of a marital estate must be equitable, but need not be equal. [Melissa] has clearly contributed more to the marital estate by way of income, investment, and savings. [Arne] spent 1990 to 1997, studying and preparing for a Ph.D. He never completed his program, but did spend time and money. The children of this couple are not new to daycare. And, except for some time spent with [Arne] as a "stay-at-home dad," the children have been in daycare nearly full

time since their birth. [Arne's] contributions to the family estate do not dictate an equal division of the estate. [Melissa's] contributions outweigh the contributions of [Arne].

[¶ 22] The trial court's findings indicate it focused solely upon the parties' financial contributions to the "family estate" in determining the property distribution. Financial contributions are but one factor to consider. We have stressed that a party's other, non-economic contributions to a marriage must be given equal consideration, particularly where there is a resulting disparity in earning capacity:

Where a homemaker's contributions to the family enable the other spouse to devote full time and attention to a business, contributing to the accumulation, appreciation, and preservation of assets, the homemaker's contributions deserve equivalent recognition in a property distribution upon dissolution of the marriage. A traditional homemaker's contributions are an asset to the enterprise of marriage and should be recognized in a property distribution upon dissolution of the marriage. A difference in earning capacity should be taken into consideration in determining a property division.

*Kautzman*, 1998 ND 192, ¶ 11, 585 N.W.2d 561 (citations omitted).

[¶ 23] The trial court has downplayed Arne's contributions to the marriage, stressing he attempted but failed to obtain his doctorate and the children spent time in daycare. It is undisputed Arne spent a significant period of time as either a full-time or part-time stay-at-home dad to enable Melissa to pursue her career. Furthermore, for much of the early years of the marriage, when Melissa was in medical school and completing her residency, Arne was working to provide for the family, first serving in the Air Force and later working as an engineer at Rockwell when the parties lived in Iowa. Arne also turned down job offers which would have enhanced his career to stay with the family and moved with the family when Melissa's career dictated. All of these facts demonstrate Arne made substantial contributions to the marriage, and these contributions enabled Melissa to further her career and make the financial contributions which the trial court deemed paramount.

[¶ 24] There is no indication the trial court considered any of the other *Ruff-Fischer* guidelines in arriving at the property distribution. Many of those factors would clearly weigh in Arne's favor. This was a marriage of relatively long duration, and Arne has suffered significant health problems. He has attention deficit disorder, which is currently controlled by medication, and he has had major surgeries to remove and reconstruct his colon. The parties enjoyed a high standard of living while married. The court's judgment allows Melissa to continue that standard of living, awarding her the family home and not requiring her to pay spousal support. Arne, on the other hand, has gone from a $180,000 home to a two bedroom apartment. It ignores the substantially disparate earning abilities between the parties. *See Kautzman*, 1998 ND 192, ¶ 11, 585 N.W.2d 561.

[¶ 25] The trial court in this case erroneously determined property distribution based upon a single factor—economic contribution to the marital estate. We conclude the property division is therefore induced by an erroneous view of the law and is clearly erroneous. We reverse and remand for redetermination of the property distribution.

### B.

[¶ 26] Melissa filed a cross-appeal challenging the trial court's valuation of her retirement account. The record shows that at the time of trial the total amount in this account was $22,095, but Melissa was only 20 percent vested in the plan. The trial court valued the account at the full $22,095, explaining:

While the Triniplus retirement account has not yet fully vested, [Melissa] is working under a three year contract with her employer, Trinity Medical Center, Minot, North Dakota. She will become fully vested in this retirement account within the time frame of her current contract. For this reason the Court adopts the full value of the account, rather than just the value of the vested portion.

[¶ 27] The trial court in this case failed to take into consideration possible future contingencies and speculated that Melissa would eventually fully vest in the retirement account. Marital property must be valued as of the date of trial. *Zuger v. Zuger*, 1997 ND 97, ¶ 10, 563 N.W.2d 804; *Grinaker v. Grinaker*, 553 N.W.2d 204, 208–09 (N.D.1996). Our cases require that valuation of retirement accounts be considered at the present value or, if there are insufficient assets for a present division, that the parties receive a set percentage of future benefits when actually paid. *van Oosting v. van Oosting*, 521 N.W.2d 93, 98 (N.D.1994); *Zander v. Zander*, 470 N.W.2d 603, 605 (N.D.1991). Division of retirement benefits at the time of divorce is preferable if sufficient assets are available to divide the present value without hardship to the parties and where testimony on valuation is not speculative. *Welder v. Welder*, 520 N.W.2d 813, 817 (N.D.1994).

[¶ 28] In light of our remand to the trial court for reconsideration of property distribution, we direct the court to revisit the valuation of Melissa's retirement account in accordance with this opinion and prior caselaw.[1]

## IV.

[¶ 29] Arne challenges the judgment provisions governing visitation.

The trial court's decision on visitation is a finding of fact which will not be reversed on appeal unless it is clearly erroneous. *Zuger v. Zuger*, 1997 ND 97, ¶ 36, 563 N.W.2d 804; *Reinecke v. Griffeth*, 533 N.W.2d 695, 698 (N.D.1995). The primary purpose of visitation is to promote the best interests of the children, not the wishes or desires of the parent. *Reinecke*, at 698.

[¶ 30] After the parties' separation they agreed on interim visitation, allowing Arne visitation with the children every other weekend, one night during each week, alternating holidays, and daily phone calls. After trial, the court ordered Arne have extended visitation for six weeks during the summer. During the remainder of the year, visitation is every other weekend, alternating holidays, one weeknight every other week, and one phone call per week.

[¶ 31] Arne asserts the trial court erred in restricting his mid-week visitations to every other week and in limiting telephone calls to one per week instead of daily. Arne claims that Melissa had agreed to the interim visitation schedule and had demonstrated her consent to continue it in her testimony at trial.

[¶ 32] Arne mischaracterizes Melissa's trial testimony. Although she conceded it was important for the children to see their father regularly, she testified the interim visitation had created difficulties for the children at home and at school, and she specifically requested that it be curtailed. In addition, the guardian ad litem and daycare provider testified to minor difficulties the children experienced related to the visitation. Keeping in mind that the primary consideration in awarding visitation is to promote the best interests of the children, we conclude the trial

---

1. We recognize the difficulty presented to the trial court when, as in this case, the parties take an "all or nothing" approach and fail to provide expert testimony of value of the retirement account. *See Anderson v. Anderson*, 504 N.W.2d 569, 571 (N.D.1993). We leave it to the trial court's discretion on remand whether to reopen the case for additional evidence on this and other financial issues, or to redetermine these issues upon the existing record.

court's finding on visitation is not clearly erroneous.[2]

## V.

[¶ 33] Arne asserts that the court erred in requiring him to pay half of the children's uncovered medical expenses and that the amount of child support should be adjusted to take into consideration the costs he incurs to exercise his visitation. Because we are reversing and remanding for a redetermination of the financial issues in the divorce, we find it unnecessary to address these issues on this appeal.

[¶ 34] We have often recognized the financial determinations in a divorce case are interrelated and may not be considered in a vacuum. *See, e.g., Nelson v. Nelson,* 1998 ND 176, ¶ 10, 584 N.W.2d 527; *Lohstreter v. Lohstreter,* 1998 ND 7, ¶ 16, 574 N.W.2d 790; *Glander v. Glander,* 1997 ND 192, ¶ 7, 569 N.W.2d 262. Reversal and remand on one issue may therefore require the court to reconsider the other financial provisions of the judgment. *See Nelson,* at ¶ 10. As an example, we are remanding in this case for a redetermination on spousal support for Arne. Any spousal support awarded on remand will change Arne's income under the child support guidelines, *see* N.D. Admin. Code § 75–02–04.1–01(5), and will necessitate a redetermination of child support.

[¶ 35] Accordingly, the trial court will have the opportunity on remand to reexamine the judgment provisions on child support and payment of medical expenses in light of any changes in the other financial provisions of the judgment, and it is unnecessary for us to consider those issues on this appeal.

## VI.

[¶ 36] Arne seeks an award of attorney fees for this appeal. Although un-

der N.D.C.C. § 14–05–23 we have concurrent jurisdiction with the trial court to award attorney fees in a divorce case, we prefer to have the issue addressed initially by the trial court because it is generally in a better position to weigh the relevant factors. *Zuger v. Zuger,* 1997 ND 97, ¶ 38, 563 N.W.2d 804. We therefore direct the trial court on remand to consider awarding attorney fees for this appeal.

## VII.

[¶ 37] We reverse the judgment and remand for further proceedings in accordance with this opinion.

[¶ 38] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.

---

2. Arne asserted on appeal the visitation provisions violate his constitutional right to the custody and companionship of his children. Arne did not raise this issue in the trial court. We do not address issues raised for the first time on appeal. *See, e.g., Pic v. City of Grafton,* 460 N.W.2d 706, 709 (N.D.1990); *Hanson v. Williams County,* 452 N.W.2d 313, 315 (N.D.1990).