2010 ND 100

**Mark PAULSON, Plaintiff and Appellee**

v.

**Cheryl PAULSON, Defendant and Appellant.**

No. 20090225.

Supreme Court of North Dakota.

June 10, 2010.

Justin D. Hager, Bismarck, N.D., for defendant and appellant; submitted on brief.

Mark Paulson, plaintiff and appellee; no appearance.

MARING, Justice.

[¶ 1]   Cheryl Paulson appeals from a divorce judgment dividing the marital property and failing to award her spousal support.   We affirm the marital property division, but conclude the trial court clearly erred in its spousal support determination.   We reverse and remand for further proceedings consistent with this opinion.

I

[¶ 2]   Mark Paulson and Cheryl Paulson were married in 1994.  The couple did not have any children together, however, both parties have children who have reached the age of majority.  Mark Paulson filed for divorce in June 2008.  He requested an equitable distribution of the marital property.   Cheryl Paulson filed an answer and counterclaim for divorce requesting equitable distribution of the marital property, and permanent and rehabilitative spousal support.  At trial, the parties testified as to their financial status, Mark Paulson's relationship with a female friend, and the value of a trust, guns, vehicles, tools, and other miscellaneous personal items.

[¶ 3]   Mark Paulson testified the couple separated in June 2006 due to conflicts regarding their financial situation and telephone calls he had made to a female friend of his.   He had a joint checking account with the same woman after he and Cheryl Paulson separated.   Mark Paulson testified he had cash withdrawals from his bank account that he believed he spent on the road during the time he and Cheryl Paulson were still married.  Mark Paulson testified he did not support his friend, but he did assist and help her financially, and she paid him back.

[¶ 4]   Mark Paulson testified his father set up a trust for him.  The Mark Paulson Trust provides for Mark Paulson's children until they reach the age of twenty-three.  However, the trust assets may be distributed to Mark Paulson or added to the principal after Mark Paulson's children turn twenty-three, at the discretion of the trustees.   He testified his youngest child has turned twenty-three.   The trust was established under his father's will before the couple's marriage.  Mark Paulson testified that his father passed away at approximately the time the couple was married.   Mark Paulson testified that his two brothers and two bank employees are the trustees.

[¶ 5]   Cheryl Paulson testified that she has moved twice, to Devils Lake and Bismarck, since the couple's separation.  She testified she asked Mark Paulson for financial assistance twice since the separation, but he refused.  He testified he does not recall any requests for assistance.   Cheryl Paulson testified she was in good health.

[¶ 6]   The trial court issued its findings of fact, conclusions of law, and order for judgment.  The trial court found:

> In dividing the marital estate and in deciding spousal support under the *Ruff–Fischer* guidelines; *Ruff v. Ruff,*

78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), the trial court in exercising its discretion is to consider:

1. *The respective ages of the parties*

Mark is fifty-two years old and Cheryl is forty-nine.

2. *Their earning ability*

Mark has a high school degree. He has most recently worked as a truck driver based in Cando, earning approximately $53,000 per year. His employment and income are likely to continue. Cheryl has a high school degree and completed two years of college, without earning a degree. She worked at several jobs during the marriage. At the time of trial, she was employed at Missouri Valley Petroleum in Bismarck earning approximately $23,000 per year. Cheryl intends to continue her employment.

3. *The duration of the marriage*

The parties were married in 1994, but began living together in 1989. They separated approximately three years before trial.

4. *The conduct of each during the marriage*

Mark testified that the reason he left the marriage was because of fighting and arguing over money. He also stated that Cheryl questioned the number of telephone calls he made to his female friend, [ ]. Mark does have a relationship with [her] that began during the marriage. He paid some of her bills and had a joint checking account upon which both he and [his friend] could draw checks. Mark's explanation for the checking account was that he set it up as a joint account so that [she] could pay Mark's bills for him when he was on the road working. Mark denies a sexual relationship with [her]. However, [she] did answer the door at Mark's residence wearing a "nightie" or pajamas. While there is no proof that Mark has had a sexual relationship with [her], there is evidence that the relationship is one of more than "just friends."

Mark did provide Cheryl with assistance in raising Cheryl's daughter during the marriage.

5. *Station in life*

The parties acquired very little personal property during the marriage, and no real property. They do not have a significant amount of debt.

6. *Circumstances and necessities of each*

Neither party has any unusual circumstances or needs.

7. *Health and physical condition*

Both Mark and Cheryl are in good physical health.

8. *Financial circumstances as shown by property owned at the time. its value at the time. its income producing capacity. if any. and whether it was accumulated or acquired before or after the marriage*

The parties filed for bankruptcy shortly after they were married, and their respective debts were discharged. All assets and debts the parties now have were acquired during the marriage. Mark is the beneficiary of a trust created by his father (Ex. 3). The trust was designed to pay for Mark's children's education. The terms of the trust allow assets remaining after the children turn twenty-three years old to be distributed, at the discretion of the trustees, to Mark or to be added to the principal of the trust. Mark has no control over the distribution of the trust assets. His testimony was that he has no interest in receiving money from the trust, but that

all income and principal from the trust should go to his children.

Mark and Cheryl had a joint checking account during the marriage. Any income each earned went to paying their bills. Cheryl usually took care of paying the bills. The parties never purchased a house nor other real property, but lived in rental properties throughout the marriage. Mark now rents a property for $250 per month, and Cheryl lives in an apartment and pays $750 per month rent.

9. *Any other matters as may be material*

Mark had significant health issues that prevented him from working for seven months. He accrued some medical bills that insurance and Medicaid did not cover, and owes his landlord $1,750 in delinquent rental payments. Cheryl receives disability payments due to injuries she suffered in a car accident in 1993.

The trial court valued and divided the marital property and did not award Cheryl Paulson spousal support. Cheryl Paulson appeals, arguing the trial court erred in failing to award her spousal support and erred in its valuation and distribution of the marital estate.

II

■ [¶ 7] Cheryl Paulson argues the trial court erred by failing to award her spousal support. According to Cheryl Paulson, the trial court did not provide an analysis of whether the *Ruff–Fischer* guideline factors favor or disfavor an award of spousal support, and she asserts the guidelines support awarding her permanent spousal support.

■ [¶ 8] Spousal support is governed by N.D.C.C. § 14–05–24.1, which provides, "[t]aking into consideration the circumstances of the parties, the court may

require one party to pay spousal support to the other party for any period of time. The court may modify its spousal support orders." A spousal support determination is a finding of fact that will not be set aside on appeal unless clearly erroneous. *Pearson v. Pearson*, 2009 ND 154, ¶ 5, 771 N.W.2d 288. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.*

■■ [¶ 9] When considering whether to award spousal support, the trial court must consider the relevant factors under the *Ruff–Fischer* guidelines. *Overland v. Overland*, 2008 ND 6, ¶ 16, 744 N.W.2d 67; *see Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952); *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966). The *Ruff–Fischer* factors include:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Heinle v. Heinle*, 2010 ND 5, ¶ 22, 777 N.W.2d 590. The trial court is not required to make a finding on each factor, but it must explain its rationale for its determination. *Id.* Property division and spousal support are interrelated and intertwined and often must be considered together, especially when there is a large difference in earning power between the

spouses. *Fox v. Fox,* 1999 ND 68, ¶ 22, 592 N.W.2d 541.

[¶ 10] While the duration of the marriage is a factor, spousal support is sometimes appropriate even when the duration was short. *Weigel v. Weigel,* 2000 ND 16, ¶ 10, 604 N.W.2d 462. There is no bright-line rule to determine whether a marriage should be considered long- or short-term. *Hitz v. Hitz,* 2008 ND 58, ¶ 16, 746 N.W.2d 732; *see Wagner v. Wagner,* 2007 ND 101, ¶ 16, 733 N.W.2d 593 (considering a twelve-year marriage long-term); *Wold v. Wold,* 2008 ND 14, ¶ 17, 744 N.W.2d 541 (considering a fifteen-year marriage long-term). The trial court may consider the parties' accustomed standard of living in a long-term marriage and, when it is impossible to maintain two households at the pre-divorce standard of living, the need to balance the burden created by the separation. *Moilan v. Moilan,* 1999 ND 103, ¶ 11, 598 N.W.2d 81. The trial court may also consider how long the parties have lived together and then marry. *See Dvorak v. Dvorak,* 2006 ND 171, ¶ 22, 719 N.W.2d 362; *Sack v. Sack,* 2006 ND 57, ¶ 13, 711 N.W.2d 157; *Horner v. Horner,* 2004 ND 165, ¶ 13, 686 N.W.2d 131.

[¶ 11] When determining spousal support, the trial court must consider both the supporting spouse's needs and ability to pay and the receiving spouse's income and needs. *Gustafson v. Gustafson,* 2008 ND 233, ¶ 6, 758 N.W.2d 895. The court does not need to determine whether a spouse is disadvantaged by the divorce to award spousal support to that spouse. *Wold,* 2008 ND 14, ¶ 13, 744 N.W.2d 541. The trial court may award permanent or rehabilitative spousal support. "Rehabilitative spousal support is awarded to equalize the burdens of divorce or to restore an economically disadvantaged spouse to independent status by pro-viding a disadvantaged spouse an opportunity to acquire an education, training, work skills, or experience to become self-supporting." *Wagner v. Wagner,* 2007 ND 33, ¶ 8, 728 N.W.2d 318. "Rehabilitative support is appropriate when one spouse has bypassed opportunities or lost advantages as a consequence of the marriage or when one spouse has contributed during the marriage to the other's increased earning capacity or moved to further the other's career." *Moilan,* 1999 ND 103, ¶ 11, 598 N.W.2d 81. We have stated:

> "This court has not adopted the 'minimalist doctrine'—one where the only determination is whether the recipient of support is merely 'self-supporting.' We have upheld rehabilitative spousal support where the recipient is already working full time. *See, e.g., Wiege v. Wiege,* 518 N.W.2d 708, 710 (N.D.1994); *Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992); *Williams v. Williams,* 302 N.W.2d 754, 758 (N.D.1981). In *Wahlberg,* the husband argued that because the wife was already self-supporting she was not 'disadvantaged.' *Wahlberg,* at 145. This court stated, '[t]he need which evidences that one spouse has been disadvantaged by the divorce and that rehabilitative support is, therefore, appropriate is not limited to the prevention of destitution.' *Id.* We have held a spouse is 'disadvantaged' who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity. *Id.* We have also stated a valid consideration in awarding spousal support is balancing the burdens created by divorce. *Id.*"

*Id.* at ¶ 15 (quoting *Van Klootwyk v. Van Klootwyk,* 1997 ND 88, ¶¶ 15–16, 563 N.W.2d 377). If there is a substantial disparity in earning capacity and a sub-

stantial income disparity that cannot be adjusted by property division or rehabilitative support, permanent spousal support may be appropriate. *Id.* at ¶ 11. "Permanent spousal support is awarded to provide traditional maintenance for a spouse incapable of adequate rehabilitation or self-support." *Wagner,* 2007 ND 33, ¶ 8, 728 N.W.2d 318.

[¶ 12] In deciding not to award Cheryl Paulson any spousal support, the trial court found:

> Cheryl request[s] spousal support from Mark. She does not specify what amount of spousal support she deems appropriate. She bases her claim on disparity of earning capacity. Cheryl earns less than half of Mark's earnings. However, she did not file a financial statement, so the Court is unable to compare her earnings and expenses with Mark's earnings and expenses. The Court will not order spousal support based solely on disparity in income.

We hold the trial court's findings regarding spousal support are clearly erroneous.

[¶ 13] Cheryl Paulson and Mark Paulson were married in 1994 and had been living together since 1987.[1] In her answer and counterclaim, Cheryl Paulson claimed to be a "disadvantaged spouse" and requested permanent and rehabilitative spousal support. She alleged she has relocated due to Mark Paulson's actions and has foregone economic advantages due to the marriage. Although Cheryl Paulson did not submit a financial affidavit regarding her expenses, she provided testimony sufficient for the trial court to determine her expenses and need, and Mark Paulson's ability to pay. Cheryl Paulson testified she was seeking spousal support be-

cause of Mark Paulson's alleged financial support of another woman while Cheryl Paulson and Mark Paulson were still married. Cheryl Paulson testified she was requesting $2,000 per month until remarriage or death. The trial court found she earns approximately $23,000 a year. She testified she is struggling financially. She provided the court with her monthly expenses, including her vehicle payment, cellular telephone, rent, and insurance.

[¶ 14] Mark Paulson testified and provided documentation about his income, and the trial court found his income was approximately $53,000 per year. He testified about his expenses including, his cellular telephone bill, rent, utilities, medical bills, and taxes. He submitted a financial affidavit.

[¶ 15] The trial court was required to analyze the *Ruff–Fischer* guidelines in its spousal support determination, which includes more than disparity of income. The trial court failed to analyze the supporting spouse's needs and ability to pay, and maintaining relative standards of living. *See Dronen v. Dronen,* 2009 ND 70, ¶ 41, 764 N.W.2d 675. Because the trial court's findings of fact are clearly erroneous and the court failed to appropriately apply the *Ruff–Fischer* guidelines in its analysis of spousal support, we reverse the court's spousal support determination and remand for appropriate findings and analysis under the *Ruff–Fischer* guidelines and the case law. The trial court may take more testimony to make additional findings if it believes it is necessary to appropriately determine spousal support.

### III

[¶ 16] Cheryl Paulson argues the trial court clearly erred in its property

---

1. We recognize the trial court found the parties began living together in 1989. However, Cheryl Paulson testified the parties began living together in 1987, and we have not identified any contradictory evidence. Therefore, we assume this is a typographical error that the court will address on remand.

valuation and distribution. In *Evenson v. Evenson*, this Court said:

> The value a trial court places on marital property depends on the evidence presented by the parties. Because a trial court is in a far better position than an appellate court to observe demeanor and credibility of witnesses, we presume a trial court's property valuations are correct. We will not reverse a trial court's findings on valuation and division of marital property unless they are clearly erroneous. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made." "A choice between two permissible views of the evidence is not clearly erroneous if the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations." Marital property valuations within the range of evidence presented to the trial court are not clearly erroneous.

2007 ND 194, ¶ 6, 742 N.W.2d 829 (citations omitted). Marital property must be equitably distributed between the parties. *Heinz v. Heinz*, 2001 ND 147, ¶ 5, 632 N.W.2d 443 (citing N.D.C.C. § 14-05-24). The assets of the marital estate must be considered, regardless of the source, to ensure an equitable division of property. *Lynnes v. Lynnes*, 2008 ND 71, ¶ 14, 747 N.W.2d 93. After the trial court values the assets, it must divide the marital estate under the *Ruff–Fischer* guidelines. *Hitz v. Hitz*, 2008 ND 58, ¶ 11, 746 N.W.2d 732. Under the guidelines, the trial court may consider both economic and noneconomic fault. *McDowell v. McDowell*, 2001 ND 176, ¶ 6, 635 N.W.2d 139. A substantial disparity must be explained. *Lorenz v. Lorenz*, 2007 ND 49, ¶ 6, 729 N.W.2d 692. "A party's dissipation of marital assets is a particularly relevant factor in arriving at an equitable distribution of the property." *Halvorson v. Halvorson*, 482 N.W.2d 869, 871 (N.D.1992).

[¶ 17] The trial court may award the separate property of one spouse to the other when an equitable distribution so requires. *Hogan v. Hogan*, 2003 ND 105, ¶ 20, 665 N.W.2d 672. The origin of the property is one factor to consider, even if the property was acquired before or inherited during the marriage. *Id.* This Court has also stated "a rule for the equitable distribution of property rights which are difficult or impossible to evaluate— ordering apportionment of the future benefits only if and when such benefits are paid." *Id.* Moreover, marital property "may be divided at the time of divorce by either awarding the present value of the benefits, or when there are insufficient assets for a present division or when present valuation is too speculative, by awarding a percentage of future payments." *van Oosting v. van Oosting*, 521 N.W.2d 93, 98 (N.D.1994). Cheryl Paulson argues the trial court erred in its property valuation and distribution of the Mark Paulson Trust, Mark Paulson's cash withdrawals, and a round table and china cabinet.

## A

[¶ 18] Cheryl Paulson argues the trial court erred by failing to include the Mark Paulson Trust in its valuation. She contends the conditions for immediate and complete distribution of the trust corpus have been reached. She contends Mark Paulson could bring an action to force the distribution of the trust, and the court could force a distribution. She argues it is analogous to retirement benefits that may be contingent upon reaching a certain age.

[¶ 19] Trusts are generally included as marital property subject to equitable distribution by the trial court. *Fox*, 1999 ND 68, ¶ 14, 592 N.W.2d 541. This Court has determined that, like pensions or retirement plans, a trial court may divide a trust by awarding the present value of the benefits. *See van Oosting*, 521 N.W.2d at 97–98. The trial court may also award a percentage of future payments when present valuation is too speculative or there are insufficient assets for a present division. *See Id.; Zuger v. Zuger*, 1997 ND 97, ¶¶ 12, 15, 563 N.W.2d 804. The potential benefits should not be valued as assets in the marital estate when the receipt of future benefits is too speculative. *Fox*, 1999 ND 68, ¶ 14, 592 N.W.2d 541 (citing *Kluck v. Kluck*, 1997 ND 41, ¶ 28, 561 N.W.2d 263; *Heggen v. Heggen*, 452 N.W.2d 96, 101 (N.D.1990); *Fries v. Fries*, 288 N.W.2d 77, 81 (N.D.1980)). In order to be considered a property asset in the marital estate, the property must be a present property interest, rather than a mere expectancy. 27B C.J.S. *Divorce* § 852 (2009).

[¶ 20] The language establishing the Mark Paulson trust provides:

### ARTICLE V

(A) The assets that are to constitute the Mark Paulson Trust referred to in subpart (C) of Article IV of this my Last Will and Testament shall be distributed as follows:

(1) First, until such time as the then youngest living child of my son, Mark Paulson, attains the age of twenty-three (23) years, the Trustees are hereby authorized to distribute, in equal or unequal shares, to or for the benefit of the then living children of my son, Mark Paulson, that portion of the income earned from the trust assets that the Trustees determine, in their sole discretion, as necessary and advisable to provide for the proper care (including medical expenses), support and education of the children of my son, Mark Paulson. While my son, Mark Paulson, is living, no income is to be distributed to the children of my son, Mark Paulson, that are then over the age of twenty-three (23) years.

(2) Any income remaining to be distributed after the application of the provisions of subpart (1) above can be distributed, at the discretion of the Trustees of this trust, to my son, Mark Paulson or added to the principal of said trust.

(3) The Trustees of this trust are hereby authorized, in their sole and absolute discretion, to distribute the principal of this trust, in equal or unequal shares, to the children of my son, Mark Paulson, as long as said principal amounts are used for reasonable education expenses by the recipients thereof.

(4) That after the then youngest living child of my son, Mark Paulson, attains the age of twenty-three (23) years, the Trustees of this trust are hereby authorized, in their sole and absolute discretion, to distribute all or part of the principal of the Mark Paulson Trust to my son, Mark Paulson. The provisions of this subpart (4) are not meant to infer, in any way or manner, that the Trustees of this trust will ever be required to distribute any principal from this trust to my son, Mark Paulson.

(B) If my son, Mark Paulson, shall die prior to the time that all of the principal of the Mark Paulson Trust assets have been distributed, all of the assets of said trust shall continue to be held in trust, by the Trustees hereinafter named, until

such time as the then youngest living child of my son, Mark Paulson, attains the age of twenty-three (23) years, at which time all of the trust assets shall be distributed, in equal shares, to the then living children of my son, Mark Paulson. If there are no then living children of my son, Mark Paulson, said trust assets shall be distributed, in equal shares, to my sons, Kenneth Paulson and Douglas Paulson with the children of any of said children of mine who are then deceased taking their parent's share by right of representation.

[¶ 21] Mark Paulson's interest in the trust is distinguishable from the husband's interest in *van Oosting* or *Zuger*. In *van Oosting*, we held that a husband with a vested interest in a credit trust, although contingent, that was certain to reach him at the time of his mother's death should be included in the marital estate. 521 N.W.2d at 96–97. In *Zuger*, the husband had a current vested interest in the trust. *Zuger*, 1997 ND 97, ¶ 14, 563 N.W.2d 804. The interests in *van Oosting* and *Zuger* are distinguishable from Mark Paulson's interest which is left to the sole and absolute discretion of the trustees.

[¶ 22] This Court's primary objective when construing a trust instrument is to ascertain the settlor's intent. *Langer v. Pender*, 2009 ND 51, ¶ 13, 764 N.W.2d 159. A discretionary trust provides the trust uncontrolled discretion over payment to the beneficiary. *Hecker v. Stark County Soc. Serv. Bd.*, 527 N.W.2d 226, 230 (N.D.1994) (citing Restatement (Second) of Trusts § 128 cmt. d (1959)). Whether a trust is a discretionary trust depends on the settlor's intent. *Id.* The settlor's intent is ascertained from the trust document itself, when the trust is unambiguous. *Id.* Whether a trust is ambiguous is a question of law, fully reviewable on appeal. *Id.*

[¶ 23] A discretionary trust beneficiary has an equitable interest, but the beneficiary cannot force the trustee to pay income or principal unless the beneficiary could establish the trustee had engaged in fraud or an abuse of discretion. *In re Jones*, 812 P.2d 1152, 1157 (Colo.1991) (citing 2 *A. Scott on Trusts* § 130, at 409 (4th ed. 1987)). Courts have held that when the trust is so discretionary that the beneficiary has no enforceable right to receive any benefits at all, the income interest is not property. Brett R. Turner, 2 *Equit. Distrib. of Property*, 3d § 6:94 (2009). Instead, courts treat the interest as a mere expectancy that gives no assurance of any future benefit. *See In re Jones*, 812 P.2d at 1157 ("Until the trustee elects to make a payment, the beneficiary has a mere expectancy."); *In re Eddy*, 210 Ill.App.3d 450, 155 Ill.Dec. 174, 569 N.E.2d 174, 181 (1991) (holding the court could consider a present interest in a trust, but not her eligibility to receive a portion of a trust in which the trustee had the discretion of what to pay the beneficiaries because it was an expectancy and not a realization); *Hawkins v. Hawkins*, 11 Conn.App. 195, 526 A.2d 872, 874 (1987) (holding the court did not err in refusing to include a trust as part of the estate because the plaintiff's interest was a mere expectancy and it was undisputed that the plaintiff was not guaranteed any disbursements from the trust); *cf. United States v. O'Shaughnessy*, 517 N.W.2d 574, 578 (Minn.1994) ("Under Minnesota law the beneficiary of a discretionary trust with the provisions described in the 1951 Trust Agreements does not have 'property' or any 'right to property' in nondistributed trust principal or income before the trustees have exercised their discretionary powers of distribution under the trust agreement.").

[¶ 24] We hold the Mark Paulson Trust is a discretionary trust. The settlor pro-

vided the trustees "sole and absolute discretion" to distribute the trust principal to Mark Paulson. The trust also states "[t]he provisions of this subpart (4) are not meant to infer, in any way or manner, that the Trustees of this trust will ever be required to distribute any principal from this trust to my son, Mark Paulson." The language of the trust indicates that Mark Paulson does not have the power to compel any distributions from the trustees, and the trustees have the power to make no distribution at all to Mark Paulson. Because Mark Paulson's interest in the trust is an expectancy that gives no assurance of any future benefit, we hold that the trial court did not err in excluding the trust from the marital estate.

**B**

[¶ 25] Cheryl Paulson argues the trial court erred in failing to consider Mark Paulson's $12,000 cash withdrawals from the marital estate. She contends that over nine months, he withdrew cash with no receipts or accounting.

[¶ 26] The trial court heard testimony regarding the parties' finances, reviewed a joint financial statement, reviewed copies of the withdrawals in question, determined the value of the marital estate, and divided the property. Although Cheryl Paulson alleges the money spent was economic fault or waste, it is within the province of the trial court to judge the credibility of the witnesses and evidence. *See Dronen,* 2009 ND 70, ¶ 23, 764 N.W.2d 675. Mark Paulson testified that he used the withdrawals for purchases while he was working as a truck driver. Because the trial court may choose between two permissible views of the evidence based on physical or documentary evidence, inferences from other facts, or credibility, we hold the trial court's finding is not clearly erroneous.

**C**

[¶ 27] Cheryl Paulson argues the trial court should have awarded a round table and china cabinet to her. She contends the parties agreed she could keep the table and cabinet, and Mark Paulson could keep his tools. However, Mark Paulson testified that he wanted the table with chairs because it belonged to his grandfather, and he wanted the cabinet because it was made for his mother.

[¶ 28] The trial court's finding is not clearly erroneous. The trial court heard the testimony and considered the testimony and credibility of the witnesses. It found "that Mark should receive ... the round wooden table with chairs, and the china cabinet." Because the trial court may choose between two permissible views of the evidence based on physical or documentary evidence, inferences from other facts, or credibility, we hold the trial court's finding is not clearly erroneous.

**IV**

[¶ 29] Because the trial court's findings of facts were not clearly erroneous, we affirm the trial court's marital property division. We reverse the trial court's findings on spousal support and remand for proceedings consistent with this opinion.

[¶ 30] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 31] The district court *may* award spousal support in appropriate cases. *See* N.D.C.C. § 14–05–24.1. The district court is to consider the *Ruff–Fischer* guidelines in making a spousal support decision. *Routledge v. Routledge,* 377 N.W.2d 542, 544 (N.D.1985). "Findings of fact ..., whether based on oral or documentary

evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." N.D.R.Civ.P. 52(a). "In reviewing findings of fact, we must view the evidence in the light most favorable to the findings. 'A choice between two permissible views of the evidence is not clearly erroneous.' 'Simply because we might view the evidence differently does not entitle us to reverse the trial court.'" *Reimche v. Reimche,* 1997 ND 138, ¶ 12, 566 N.W.2d 790 (citations omitted).

[¶ 32] Here the district court made specific findings on each of the *Ruff–Fischer* guidelines—each supported by record evidence—and decided an award of spousal support was not appropriate.

[¶ 33] The majority arbitrarily substitutes its judgment for that of the district court.

[¶ 34] I would affirm.

[¶ 35] Dale V. Sandstrom