Filed 3/22/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 44

Michiel James Nuveen, Plaintiff, Appellant and Cross-Appellee

v.

Elizabeth Ann Nuveen, Defendant, Appellee and Cross-Appellant

No. 20100134

Appeal from the District Court of Nelson County, Northeast Central Judicial District, the Honorable Karen Kosanda Braaten, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Patti J. Jensen (argued), 1312 Central Avenue North East, P.O. Box 386, East Grand Forks, MN 56721-0386, for plaintiff, appellant and cross-appellee.

Scott D. Jensen (argued), 401 DeMers Avenue, Suite 500, P.O. Box 5849, Grand Forks, ND 58206-5849, for defendant, appellee and cross-appellant.

Nuveen v. Nuveen

No. 20100134

Kapsner, Justice.

[¶1] Michiel James Nuveen appealed a district court judgment awarding Elizabeth Ann Nuveen $7,500 per month in permanent spousal support.  Michiel Nuveen asserts the district court erred in setting the amount and duration of the spousal support award.  Elizabeth Nuveen cross-appealed, arguing the district court was clearly erroneous in accepting Michiel Nuveen’s expert’s valuation of his orthodontia practice, and the court was clearly erroneous in not equalizing the parties’ incomes through spousal support.  We conclude the district court did not err in its findings on the value of Michiel Nuveen’s orthodontia practice, did not err in awarding permanent spousal support, and did not err in awarding $7,500 per month in spousal support.  We affirm the judgment.

I

[¶2] Michiel Nuveen and Elizabeth Nuveen were married in July 1991 and divorced in October 2007.  The parties have three children aged sixteen, thirteen, and eleven years old at the time of the trial.  Michiel Nuveen is an orthodontist in Grand Forks, North Dakota, and his practice is organized as an S Corporation of which he is the sole shareholder.  Elizabeth Nuveen has not been employed since 1996.  The parties stipulated to many of the divorce provisions, but reserved for trial the issues of the value of Michiel Nuveen’s orthodontia practice, property division, and the amount and duration of spousal support.  Michiel Nuveen and Elizabeth Nuveen each had an expert witness testify on valuation methods and the value of Michiel Nuveen’s orthodontia practice.  Michiel Nuveen’s accountant testified on how Michiel Nuveen receives income from his orthodontia practice and testified generally on how an S Corporation operates.  The parties also testified.  After a five-day trial, the district court made findings on the value of the orthodontia practice, relying mostly on Michiel Nuveen’s expert’s valuation, and divided the parties’ property.  The district court awarded Elizabeth Nuveen $7,500 per month in permanent spousal support after finding there would be a future substantial disparity in the parties’ incomes, and rehabilitative spousal support and the property division would not remedy the disparity.

II

[¶3] An award of spousal support is a finding of fact, and this Court will not set aside an award of spousal support on appeal unless it was clearly erroneous.  
Duff v. Kearns-Duff
, 2010 ND 247, ¶ 13, 792 N.W.2d 916.  “A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after a review of the entire record, we are left with a definite and firm conviction a mistake has been made.”  
Id.
  A district court must consider the relevant factors under the 
Ruff-Fischer
 guidelines in determining whether an award of spousal support is appropriate.  
Id.
 at ¶ 14; 
see
 
Fischer v. Fischer
, 139 N.W.2d 845, 852 (N.D. 1966); 
Ruff v. Ruff
, 78 N.D. 775, 784, 52 N.W.2d 107, 111 (1952).  The 
Ruff-

Fischer
 guidelines require the district court to consider:

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

Duff
, at ¶ 14 (quoting 
Krueger v. Krueger
, 2008 ND 90, ¶ 8, 748 N.W.2d 671; 
Sommer v. Sommer
, 2001 ND 191, ¶ 9, 636 N.W.2d 423).  A court must consider the needs of the spouse seeking support and the needs and ability to pay of the supporting spouse.  
Id.
 (citing 
Overland v. Overland
, 2008 ND 6, ¶ 16, 744 N.W.2d 67).  The district court does not need to make specific findings on each factor of the 
Ruff-

Fischer
 guidelines as long as this Court can determine the reasons for the court’s decision.  
Id.
 (citing 
Krueger
, at ¶ 8).

[¶4] The parties do not contest the following findings by the district court.  At the time of trial, Michiel Nuveen was forty-one years old, and Elizabeth Nuveen was forty-three years old.  The parties were married for sixteen years, which the court considered a long-term marriage.  Both parties admitted to misconduct in the marriage, and the court found that any alleged misconduct did not have an impact on the issue of spousal support.  The parties lived comfortably and had improved their station in life throughout their marriage.  Michiel Nuveen had no health or physical conditions affecting his ability to work.  Elizabeth Nuveen has a blood clotting disorder, which the court found does not limit her ability to work other than limiting her from a physically strenuous job.

[¶5] The parties do contest the district court’s findings on the value of the orthodontia practice, and Elizabeth Nuveen’s need for support and Michiel Nuveen’s ability to pay spousal support.

III

[¶6] Both parties proposed an equal division of the parties’ property would be equitable and the court agreed, making the valuation of major assets of high importance in this divorce.  Michiel Nuveen was awarded his orthodontia practice, which the district court found has a “tremendous income earning capacity.”  “Property division and spousal support are interrelated and intertwined and often must be considered together, especially when there is a large difference in earning power between the spouses.”  
Paulson v. Paulson
, 2010 ND 100, ¶ 9, 783 N.W.2d 262 (citing 
Fox v. Fox
, 1999 ND 68, ¶ 22, 592 N.W.2d 541).  On cross-appeal, Elizabeth Nuveen contests the district court’s valuation of Michiel Nuveen’s orthodontia practice, arguing the court should have accepted her expert’s appraisal.

[¶7] Valuation of property is a finding of fact which will not be reversed on appeal unless clearly erroneous.  
Lynnes v. Lynnes
, 2008 ND 71, ¶ 16, 747 N.W.2d 93.

A district court’s valuation of property is presumed correct, and the evidence presented must be viewed in the light most favorable to the district court’s finding of fact.  It is the province of the district court to judge the credibility of witnesses and the evidence they introduce.  When the district court’s valuation is within the range of evidence provided by the parties, the district court’s valuation will not be set aside, unless this Court has a definite and firm conviction a mistake has been made.

Id.
 (citations omitted); 
see also
 
Dronen v. Dronen
, 2009 ND 70, ¶ 23, 764 N.W.2d 675.  The fair market value of a business is ordinarily the proper method for valuing property in a divorce.  
Sommers v. Sommers
, 2003 ND 77, ¶ 10, 660 N.W.2d 586 (citing 
Heggen v. Heggen
, 452 N.W.2d 96, 99 (N.D. 1990)).  “Fair market value is the price a buyer is willing to pay and the seller is willing to accept under circumstances that do not amount to coercion.”  
Id.
 (quoting 
Heggen
, at 99).  When making a valuation of a professional corporation, the goodwill of a business may be considered, and “the trial court must include at a 
minimum
 the interest in the office equipment, furniture, fixtures, and the accounts receivable.”  
Id.
 at ¶ 9 (quotations omitted) (emphasis in original).

[¶8] The district court found the appraisal from Michiel Nuveen’s expert, Dr. Leonard Sliwoski, more accurate than the appraisal from Elizabeth Nuveen’s expert, Kevin Shea.  In making its findings on the value of the orthodontia practice, the district court relied on Sliwoski’s appraisal and made a few adjustments.  The court found Sliwoski’s appraisal more accurate because Sliwoski is a certified appraiser who performed the appraisal in conformity with the Uniform Standards of Professional Appraisal Practice.  Sliwoski testified the Uniform Standards of Professional Appraisal Practice are consistent with Internal Revenue Service rulings on valuing closely held businesses, like the orthodontia practice.  Using an income approach, Sliwoski’s valuation provided a fair market value of the stock of the orthodontia practice, which is organized as an S Corporation.  Sliwoski considered the tangible and intangible assets, earnings, and debt of the practice to complete a stock valuation.  The court considered Sliwoski’s method of determining the value of intangible assets a critical factor in finding Sliwoski’s appraisal more accurate, because Sliwoski relied upon the amount Michiel Nuveen paid for intangible assets three and a half years prior to the appraisal.  The court found the prior sale was a “truly comparable sale” because it was an arm’s-length transaction, with a willing seller and buyer of the same practice in the same market.  The court found the amount Michiel Nuveen paid for the practice’s intangible assets could be relied upon to accurately determine their fair market value.

[¶9] Elizabeth Nuveen’s expert, Shea, is a licensed lawyer in Minnesota and typically prepares appraisals for the purpose of brokering sales of dental practices.  Shea used three valuation methods, averaged the values from those methods, and arrived at a weighted average for the value of the orthodontia practice.  The district court found Shea’s valuation of the intangible assets was less accurate.  Shea valued the intangible assets of the orthodontia practice at a figure more than double what Michiel Nuveen paid for them three and a half years prior to his appraisal.  The court found it did not make sense not to consider the prior sale, and it was not reasonable of Shea to conclude the intangible assets would have more than doubled in value in less than four years in the flat economic growth of the Grand Forks market.

[¶10] The district court found that regardless of the difference in the valuation methods, the two appraisals yielded similar results, except on the value of the intangible assets.  The court relied upon Sliwoski’s valuation of the intangible assets and the stock value of the practice provided by Sliwoski.  The court made an adjustment and did not apply a 12 percent “marketability discount” Sliwoski had applied.  Instead, the court accepted the maximum value Sliwoski placed on the intangible assets because the experts agreed the practice was stable and highly profitable.  The court made another adjustment and subtracted the cash assets of the orthodontia practice, because those assets had already been included in the parties’ property and debt listing.  The district court’s valuation of the orthodontia practice is presumed correct, the court made appropriate credibility determinations, and the court’s valuation is within the range of evidence provided.  
See
 
Lynnes
, 2008 ND 71, ¶ 16, 747 N.W.2d 93.  We are not left with a definite and firm conviction a mistake has been made.

IV

[¶11] The district court awarded Elizabeth Nuveen $7,500 per month in spousal support.  The parties contest the amount of the spousal support award on appeal.

[¶12] Michiel Nuveen argues the district court erred in computing his income because the court should have considered only his available income per month.  Elizabeth Nuveen argues the court should have relied upon the orthodontia practice’s net profits and Michiel Nuveen’s gross wages to calculate his income.  She argues the practice’s cash assets and other income are available to Michiel Nuveen, and the court should have considered the practice’s cash assets and income in its findings on Michiel Nuveen’s ability to pay spousal support.  The district court’s findings include several figures pertaining to Michiel Nuveen’s income and the income of his practice.  The court listed Michiel Nuveen’s wages from 2004 to 2008, the net profits of the orthodontia practice from 2004 to 2008, cash distributions received by Michiel Nuveen from 2004 to 2007, and Michiel Nuveen’s gross income in 2007.  The court calculated Michiel Nuveen’s gross income by adding his wages as reported on his W-

2 tax form and the amount of disposable cash Michiel Nuveen receives in distributions, as reported by his accountant.  The court did not say only one of these figures was relevant, but rather the court relied on these figures to find Michiel Nuveen had an ability to pay a significant amount of spousal support.  The court’s findings are appropriate and supported by the testimony of Michiel Nuveen’s accountant and Michiel’s tax returns.  The court’s findings demonstrate an understanding of how Michiel receives income from his orthodontia practice and how an S Corporation operates.  The computation of Michiel Nuveen’s income does not constitute a clear error.

[¶13] Michiel Nuveen argues the district court erred in awarding $7,500 per month because the court did not sufficiently consider his ability to pay support or Elizabeth Nuveen’s need for support.  Elizabeth Nuveen admits $7,500 per month will allow her to maintain the lifestyle to which she has become accustomed, but argues the amount is inadequate because she will not be able to save for retirement, pay health insurance, purchase a new car, or meet her monthly expenses when she no longer receives child support.  The district court found Michiel Nuveen’s career benefitted from Elizabeth Nuveen staying home to care for their children, and the parties should equitably share the overall reduction in their separate standards of living.  The court considered that Elizabeth Nuveen was forty-three at the time of trial, she had a communications degree and developed certain skills through her volunteer work, and her medical condition somewhat limited her employment options.  Elizabeth Nuveen had not worked outside the home since 1996 and preferred to remain unemployed so that she could take her children to their extracurricular activities.  Elizabeth Nuveen testified she would consider employment, but the court found she likely would not earn much more than minimum wage.  The court found Elizabeth Nuveen’s monthly expenses totaled $9,651, and her needs exceeded this figure because the expenses did not include medical insurance premiums, the children’s activity expenses, and retirement investment money.  The court found Elizabeth Nuveen was entitled to adequate spousal support because she would not have child support to help maintain her home and lifestyle after the children completed school.  The court considered that Elizabeth Nuveen received $7,409 per month in spousal support prior to the divorce judgment, which had been sufficient to cover her expenses without having to use any of the child support she had received.

[¶14] The court’s finding that Michiel Nuveen’s wages alone over a five-year period ranged from a low of over $400,000 to a high of over $600,000 demonstrates his ability to pay spousal support at the set amount while meeting his monthly expenses of $10,269.  The district court found Michiel Nuveen’s monthly expenses were $10,269 per month, which included $4,250 per month for child support.  Because of Michiel Nuveen’s income, he could support Elizabeth Nuveen so she could maintain her prior schedule to remain available for their children and their activities.  The court found Michiel Nuveen had been sufficiently able to pay $7,409 per month in spousal support for two years prior to trial.  The district court’s findings on the parties’ needs and Michiel Nuveen’s ability to pay spousal support are appropriate and supported by the evidence on the record.

[¶15] On cross-appeal, Elizabeth Nuveen argues the district court should have attempted to equalize the incomes of the parties.  This Court has not endorsed equalization of incomes through spousal support, although a difference in earning power may be considered.  
Duff
, 2010 ND 247, ¶ 15, 792 N.W.2d 916 (citing 
Sommers
, 2003 ND 77, ¶¶ 17-18, 660 N.W.2d 586).  “[E]qualization of income between divorcing spouses is not a goal or measure of spousal support . . . .”  
Christian v. Christian
, 2007 ND 196, ¶ 11, 742 N.W.2d 819.  The district court was not required to attempt to equalize the parties’ incomes.

[¶16] The court clearly laid out its basis for the award in the findings of fact.  The court considered the proper factors, and we are not left with a definite and firm conviction a mistake was made.  The court did not err in awarding Elizabeth Nuveen $7,500 per month in spousal support.

V

[¶17] Michiel Nuveen argues Elizabeth Nuveen should have been awarded rehabilitative spousal support rather than permanent spousal support, because she is capable of rehabilitation.  Elizabeth Nuveen argues permanent support was appropriately granted because she is economically disadvantaged and cannot be equitably rehabilitated.

[¶18] A district court may award a spouse either rehabilitative or permanent spousal support.  “Rehabilitative spousal support is awarded to equalize the burdens of divorce or to restore an economically disadvantaged spouse to independent status by providing a disadvantaged spouse an opportunity to acquire an education, training, work skills, or experience to become self-supporting.”  
Paulson
, 2010 ND 100, ¶ 11, 783 N.W.2d 262 (quoting 
Wagner v. Wagner
, 2007 ND 33, ¶ 8, 728 N.W.2d 318).  “Rehabilitative support is appropriate when one spouse has bypassed opportunities or lost advantages as a consequence of the marriage or when one spouse has contributed during the marriage to the other’s increased earning capacity or moved to further the other’s career.”  
Id.
 (quoting 
Moilan v. Moilan
, 1999 ND 103, ¶ 11, 598 N.W.2d 81).  “Permanent spousal support is appropriate ‘when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development she lost during the course of the marriage.’”  
Christian
, 2007 ND 196, ¶ 9, 742 N.W.2d 819 (quoting 
Wagner
, at ¶ 8; 
Staley v. Staley
, 2004 ND 195, ¶ 16, 688 N.W.2d 182).  “Permanent spousal support is awarded to provide traditional maintenance for a spouse incapable of adequate rehabilitation or self-support.”  
Paulson
, at ¶ 11 (quoting 
Wagner
, at ¶ 8).  Permanent spousal support may be appropriate “[i]f there is a substantial disparity in earning capacity and a substantial income disparity that cannot be adjusted by property division or rehabilitative support . . . .”  
Id.
 (citing 
Moilan
, at ¶ 11).

[¶19] In 
Christian
, 2007 ND 196, 742 N.W.2d 819, this Court upheld an award of permanent spousal support based upon the court’s findings that:

At the time of trial, Timothy Christian was 47 years old, and Diane Christian was 48 years old.  Timothy Christian earned approximately $107,000 per year, and Diane Christian earned approximately $25,000 per year.  The court found Diane Christian’s earning ability was limited by her age, her lack of education, her health problems, which limited her ability to do strenuous work, her long absence from the work force, her “reasonabl[e]” wish to remain in Glen Ullin until their child graduates from high school, and her lack of income if she were to pursue further education or training.  The court considered their long-

term marriage of more than 20 years.  The court noted the parties’ decision to enhance Timothy Christian’s earning ability required frequent moves and prevented Diane Christian from maintaining significant employment or pursuing educational opportunities during the marriage.  The court noted she has an enlarged heart that causes blood clots and requires regular medical care and medication.  The court found that she would never approach his income-producing ability even if she returned to school.  Considering the terms of the marital property settlement, the court found Timothy Christian also had the financial ability to pay her $1,200 per month in permanent spousal support while still maintaining his standard of living in the Chicago area.  The court noted that the parties’ incomes would be comparable, but after the child support obligation terminated, his income would be approximately twice as much as hers.

Christian
, at ¶ 10.

[¶20] The district court’s findings in this case are similar to the court’s findings in 
Christian
.  The district court in this case found Elizabeth Nuveen was forty-three years old at the time of trial and Michiel Nuveen was forty-one.  The court found the parties’ sixteen-year marriage was long-term.  Michiel Nuveen had a “tremendous earning capacity,” and Elizabeth Nuveen did not have an income.  Although Elizabeth Nuveen is educated and developed skills through her volunteer work, she has not worked since 1996.  Elizabeth Nuveen’s last employment was as a flight attendant, and she is no longer physically capable of being a flight attendant.  The parties disputed whose decision it was that Elizabeth Nuveen quit working to stay home and care for the parties’ children, but the court found Michiel Nuveen asked Elizabeth Nuveen to stay home, and this benefitted Michiel by allowing him to focus on his practice.  The court found the parties should equitably share the overall reduction in their separate standards of living, and Elizabeth Nuveen would not be rehabilitated to where her income would be “anywhere near” Michiel Nuveen’s income.  The court stated Elizabeth Nuveen had a minimal earning capacity.  The court found, “There exists a substantial disparity in these parties’ incomes that cannot be readily adjusted by property division or rehabilitative spousal support, and, therefore, permanent spousal support is appropriate in this case.”  A court may rely upon a substantial disparity in incomes that cannot be remedied by a property division or rehabilitative spousal support to award permanent spousal support.  
See
 
Paulson
, 2010 ND 100, ¶ 11, 783 N.W.2d 262.  The court’s findings are adequate and supported by the record.

VI

[¶21] We affirm the district court judgment awarding Elizabeth Nuveen $7,500 per month in permanent spousal support.

[¶22] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Gerald W. VandeWalle, C.J.

Sandstrom, Justice, dissenting in part.

[¶23] Elizabeth Nuveen and Michiel Nuveen were married for 16 years.  In the divorce, she received approximately one million dollars in property.  The district court ordered him to pay her $7,500 per month in permanent spousal support, plus $4,250 per month in child support.

[¶24] She asks this Court to order $30,000 per month in permanent spousal support.  At the time of the trial, she was 43 years old, and she has a college degree in communications.

[¶25] He asks that the spousal support be rehabilitative and the duration be limited.

[¶26] This Court has long stated that rehabilitative support is preferred over permanent support.  
See, e.g.
, 
Wiege v. Wiege
, 518 N.W.2d 708, 711 (N.D. 1994).  “We prefer temporary rehabilitative support to remedy . . . disadvantage, and indefinite permanent support is appropriate only if a spouse ‘cannot be adequately restored to independent economic status.’  
Heley [v. Heley]
, 506 N.W.2d [715,] 720 [(N.D. 1993)].  Therefore, a trial court should consider rehabilitative support first because it may eliminate the need for permanent support.”  
Id.
  Elizabeth Nuveen is in good health, and there is no reason not to expect at least some degree of rehabilitation.

[¶27] I agree with the majority that Elizabeth Nuveen’s spousal support should not be increased.  I would remand for the district court to establish a reasonable time for rehabilitation.

[¶28] Dale V. Sandstrom